
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| YVONNE CAUDILLO by next friend Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association,<br><br>    Plaintiffs<br><br>v.<br><br>LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District,<br><br>    Defendants | § § § § § § § § § § § § § § § § § § § § § |



**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

**AUG - 6 2003**

**CLERK, U.S. DISTRICT COURT**
By _____
        **Deputy**

Civil Action No. 5-03CV0165-C

---

# DEFENDANT, JACK CLEMMONS, Ed.D.'s
# BRIEF IN SUPPORT OF MOTION
# FOR SUMMARY JUDGMENT

---

Ann Manning
R. Michael McCauley, Jr.
Timothy T. Pridmore
McWHORTER, COBB & JOHNSON, L.L.P.
P.O. Box 2547
Lubbock, Texas 79408-2547
(806) 762-0214
(806) 762-8014 (Facsimile)

ATTORNEYS FOR DEFENDANT
JACK CLEMMONS, Ed.D.

# **TABLE OF CONTENTS**

**PAGE NO.**

I.     **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **SUMMARY OF ARGUMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   **ARGUMENTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.    Background of Defense of Qualified Immunity . . . . . . . . . . . . . . . . . . . . . 4

     B.    Elements of the Qualified Immunity Defense . . . . . . . . . . . . . . . . . . . . . . . . 5

           1.    Qualified immunity is mandated as Defendant's denial
                of access to Plaintiffs was not in violation of a clearly
                established constitutional right or statutory right . . . . . . . . . . . . . . . . . . 5

                  a.    There was no viewpoint discrimination as LISD
                       and Defendant exercised their authority given
                       under the Equal Access Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                       1)    The well-being exception was invoked . . . . . . . . . . . . . . . 7

                       2)    In light of the purpose served by the forum,
                            the well-being exception is invoked because
                            of the constitutionally permissible distinctions
                            between children and adults . . . . . . . . . . . . . . . . . . . . . . 10

                       3)    There is no viewpoint discrimination and the
                            Equal Access Act is not violated when invoking
                            the exception for maintaining order . . . . . . . . . . . . . . . 13

                  b.    Defendant did not violate Plaintiffs' First Amendment
                         right of speech and association since there was a
                           compelling state interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

           2.    Qualified immunity is mandated as Defendant's conduct was
                  objectively reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE NO.**

*Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 253 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alton v. Hopgood*, 994 F. Supp. 827, 835 (S.D., Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bethel School District v. Fraser*, 478 U.S. 675, 682 (1986) . . . . . . . . . . . . . 10,11,13,14,16,17,19

*Board of Education v. Earles*, 536 U.S. 822 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,16

*Board of Education v. Pico*, 457 U.S. 853 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Boddie v. City of Columbus*, 989 F.2d 745, 748 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burns-Toole v. Byrne*, 11 F.3d 1270 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789,804 (1984) . . . . . . . . . . . . 7

*Cornelius v. NAACP Legal Defense and education Fund, Inc.*,
    473 U.S. 788,806 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999) . . . . . . . . . . . . . . . . . . . . . 13

*Davis v. Scherer*, 468 U.S. 183, 193 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edwards v. Aguillardi*, 42 U.S. 578, 584, n.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

*Ginzberg v. New York*, 390 U.S. 629 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Greer v. Spock*, 424 U.S. 828, 836 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,19

*Hassan v. Lubbock ISD*, 55 F.3d 1075, 1079 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 5,17

*Kansa Reinsurance Co. v. Cong Mortgage Corp.*, 20 F.3d 1362, 1371
(5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*King v. Chide*, 974 F.2d 653 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 18

*Lawrence v. Texas*, 123 S.Ct. 2472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990) . . . . . . . . . . . . . . . . . . . . 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) . . . . . . . . . . . . . 3

*New Jersey v. TLO*, 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 4, 18

*Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*,
992 F.2d 1401 (5th Cir. 1992), *cert. denied*, 992 F.2d 1398,
113 S.Ct. 187 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rosenberger v. Rector and Visitors of University of Virginia*,
515 U.S. 819, 828 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Seigert v. Gilley*, 500 U.S. 226, 231 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Southard v. Texas Board of Criminal Justice*, 114 F.3d 539 (5th Cir. 1997) . . . . . . . . . . . . . 20

*Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tinker v. Des Moines Independent Community School District;*
393 U.S. 503, 513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.17

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Vernonia School District v. Acton*, 515 U.S. 646 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

*Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## EDERAL STATUTES

20.U.S.C. § 1681(a) (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20 U.S.C. § 4071 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

20 U.S.C. § 4071(f) (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 2201-02 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Equal Access Act, 20 U.S.C. § 4071 (2003) (passim) . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,12,13,20

Equal Access Act, 20 U.S.C.§ 4071(a) (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

Federal Civil Rights Act of 1871, 42 U.S.C. §§1983, 1988 (2003) . . . . . . . . . . . . . . . . . . . . . . . 20

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATE CASES

*Bastrop ISD v. Toungate,* 958 S.W.2d 365 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Shoemaker v. State*, 971 S.W.2d 178 (Tex. App. - Beaumont 1998) . . . . . . . . . . . . . . . . . . . . 11

## STATE STATUTES

TEX. ALCO. BEV. CODE ANN §§ 106.01 and 106.02 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . 11

TEX. FAM. CODE ANN § 262.001 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. LOCAL GOVT CODE ANN. §351.903 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX PENAL CODE ANN. § 21.06 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. PENAL CODE ANN. § 21.11 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10,12

TEXAS PENAL CODE ANN. §21.11(a) (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEXAS PENAL CODE ANN. §21.11(b) (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. PENAL CODE ANN. §§ 22.015(Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. PENAL CODE ANN. §§ 22.02 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEXAS PENAL CODE ANN. § 46.13 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEXAS PENAL CODE ANN. § 71.02 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. TRANSP. CODE ANN § 729.001 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| YVONNE CAUDILLO by next friend Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 5-03CV0165-C |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District, | § § § § § § § § § § | |
| Defendants | § § | |

# DEFENDANT, JACK CLEMMONS, Ed.D.'s
# BRIEF IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE SAM R. CUMMINGS, DISTRICT JUDGE:

COMES NOW Defendant, Jack Clemmons, Ed.D (referred to hereinafter as "Clemmons" or "Defendant"), and files this his Brief in Support of Motion for Summary Judgment on the basis

of qualified immunity and respectfully asks the Court to render summary judgment against Plaintiffs on all causes of action and would respectfully show the Court the following:

## I.

### STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56 (c)). When the ultimate trial burden rests with his opponent, the movant need only "[point] out to the district court" an absence of evidence to support the opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party who bears the burden of proof at trial to show with "significant probative" evidence that a triable issue of fact exist. *Kansa Reinsurance Co. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1371 (5th Cir. 1994); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); *Celotex Corp.*, 477 U.S. at 322-24. Whether a fact is material depends upon whether it will affect the outcome at trial. *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1401 (5th Cir. 1993), *cert. denied*; 113 S.Ct. 187 (1992). This standard is akin to that for a directed verdict. *Liberty Lobby, Inc.*, 477 U.S. at 250-51. The court's function is not to determine the "true" facts of the case, but only to determine if "there is sufficient evidence favoring the non-moving party for the jury to return a verdict for that party." *Id.* at 249. The court ignores "colorable" or insignificant evidence and renders judgment if the record supports

one reasonable conclusion. *Id. at 249-51.* In making this determination, the court must view the evidence in the light most favorable to the non-movant, affording the party the benefit of all reasonable impressions that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If, under such a view of the evidence, it is clear that no more than a "metaphysical doubt" exists as to the material facts of the case, and that the movant is clearly entitled to judgment under those facts, then summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.

## SUMMARY OF ARGUMENTS

Summary judgment should be granted in that:

1.     Defendant is entitled to qualified immunity on the basis that he did not violate a clearly established constitutional or statutory right.

2.     Defendant is entitled to qualified immunity on the basis that his conduct was objectively reasonable in light of the legal rules and laws clearly established and set forth at the time of the denial of access.

Defendant incorporates by reference its Motion for Summary Judgment, evidence attached thereto and his Apendix as if copied in full herein.

### III.

### ARGUMENTS AND AUTHORITIES

### Defendant is Entitled to Qualified Immunity

To begin with, when governmental officials are sued in their individual capacity, said persons are entitled to a presumption of qualified immunity from suit. *See Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990). Defendant was sued in his individual capacity and, as such, Plaintiffs must overcome his presumed and asserted qualified immunity defense. In order to defeat Defendant's qualified immunity defense, Plaintiffs must prove that Defendant violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Seigert v. Gilley*, 500 U.S. 226, 231 (1991). Plaintiffs cannot do so.

### A.   Background of the Defense of Qualified Immunity

The defense of qualified immunity attempts to balance various competing interests. The first is that of an aggrieved party who seeks vindication of his constitutional guarantees against governmental officials. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The second is the equally important concern for an effective government, in that exposing public officials to suit risks inhibiting the ardent performance of their duties. *Id.* at 638.

To appease these competing interests, qualified immunity was born. It insulates governmental officials from suit as long as their actions could have reasonably been thought constitutionally valid. *Creighton*, 483 U.S. at 638. Thus, through immunity, officials are provided the ability to "'*reasonably* anticipate' when [their] conduct may give rise to liability for damages." *Id.* at 646, (quoting *Davis v. Scherer*, 468 U.S. 183 (1984) (emphasis added).)

**B.      Elements of the Qualified Immunity Defense**

The defense has two main components. The first demands the presence and violation of a clearly established constitutional right. *Walton v. Alexander*, 44 F.3d 1297, 1301 (5th Cir. 1995). A right is so established when its contours are sufficiently clear so as to make a reasonable official understand that what he is doing violates that right. *Creighton,* 483 U.S. at 640; *Walton,* 44 F.3d at 1301. Though it is not necessary that the exact action has been previously held unlawful, the inquiry must take into consideration the particular setting in which the conduct occurred. *Id.* at 639-40. Deciding the matter at a general or abstract level is incorrect. *Id.* Moreover, the pertinent time period is that existing when the official acted. *See Siegert v. Gilley*, 500 U.S. at 231; *Boddie v. City of Columbus*, 989 F.2d 745, 748 (5th Cir. 1993); *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993). Judicial opinions and legislative enactments rendered **after** that date are irrelevant. *Id.*

The second element entails the determination of whether the actor's conduct was objectively reasonable. *Spann,* 987 F.2d at 1114. Even if the Court finds a violation of a clearly established constitutional right, Defendant is still immune from liability "if reasonable public officials could differ on the lawfulness of their actions." *Hassan v. Lubbock ISD,* 55 F.3d 1075, 1079 (5th Cir. 1995), *cert. den.* 516 U.S. 995 (1995).

**1.      Qualified immunity is mandated as Defendant's denial of access to Plaintiffs was not in violation of a clearly established constitutional right or statutory right.**

Plaintiffs complain that Defendant denied equal access to a limited open forum on the basis of content and viewpoint of their speech in violation of the Equal Access Act, 20 U.S.C. §§ 4071 (2003), *et seq.*, and in violation of their constitutional rights of free speech and association under

the First and Fourteenth Amendments to the U.S. Constitution. *See Plaintiffs' Complaint*. (App. at pp. 17-25) Plaintiffs' argument fails on all points.

Pursuant to Lubbock Independent School District ("LISD") Board Policy FNAB (LEGAL), the Board has established a limited open forum pursuant to the Equal Access Act. (App. at pp. 28-30) The Equal Access Act states, to-wit:

> (a) Restriction of limited open forum on basis of religious, political, philosophical, or other speech context prohibited. It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

> . . .

> (f) Authority of schools with respect to order, discipline, well-being, and attendance concerns. Nothing in this title [20 USCS §§4071 et seq.] shall be construed to limit the authority of the school, its agents or employees, **to maintain order and discipline on school premises, to protect the well-being of students** and faculty, and to assure that attendance of students at meetings is voluntary.

20 U.S.C. § 4071 (2003) (emphasis added).

It is well settled law that, when the state establishes a limited open forum, there is no requirement to allow individuals to engage in every type of speech. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). In so doing, the state is allowed to reserve its forum for the discussion of certain topics. *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995).

Accordingly, the Equal Access Act, 20 U.S.C. § 4071(f) (2003) specifically allows the entity to restrict access for the well-being of students and to maintain order and discipline. The entity

(school) has the latitude to "preserve the property under its control for the use to which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836 (1976). Further, "control over access to a non-public forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985). Viewpoint discrimination is defined as "regulation of speech in ways that favor some viewpoints or ideas at the expense of others." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). The facts do not support Plaintiffs' contentions.

### a. There was no viewpoint discrimination as LISD and Defendant exercised their authority given under the Equal Access Act.

#### 1) The well-being exception was invoked.

Initially, we must address whether LISD and Defendant's actions constituted viewpoint discrimination. In the present case, it did not. The restriction is not viewpoint discriminatory because the well-being exception was invoked in response to Texas law and LISD policy.

In accordance with both Federal and Texas law, LISD closed its limited open forum to all issues of sex and sexual activity for the well-being of its students. At the time of the denial, the State of Texas had a law banning sodomy, TEX. PENAL CODE ANN §21.06 (Vernon 2003)[1]. Subsequently, on June 26, 2003, the U.S. Supreme Court struck down this statute as being unconstitutional. *Lawrence v. Texas*, 123 S.Ct. 2472; 156 L.Ed.2d 508; 2003 U.S. LEXIS 5013 (2003). However, at

---

[1] Tex. Penal Code Ann. §21.06 states:

   (a) A person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex.
   (b) An offense under this section is a Class C misdemeanor.

the time the LISD policy was made, and the decisions made the basis of Plaintiffs' claims were determined, such statute was still legally controlling.

Notwithstanding the Supreme Court's decision, at the time of the denial, as well as presently, Texas had other special protections regarding sexual contact with a child. Under Texas Penal Code, §21.11(a)[2], it is the crime of "indecency with a child" when sexual contact is made with a child by the same or opposite sex. While there is an affirmative defense permitting unforced sexual contact between an actor who is not more than three years older than the victim and is of the opposite sex, there is **no** affirmative defense for sexual contact between an actor and a child of the same sex to have sexual contact, no matter what the age difference actually is. TEX. PENAL CODE ANN § 21.11(b) (Vernon 2003)[3]. This statute has not been held unconstitutional.

Further, LISD has an abstinence policy in teaching matters of sexual activity and sexual contact. In its abstinence policy, LISD takes the position that there is no such thing as safe sex

---

[2] Indecency with a child:
Tex. Penal Code Ann. §21.11 states:
  (a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:
    (1) engages in sexual contact with the child or causes the child to engage in sexual contact; or
    (2) with intent to arouse or gratify the sexual desire of any person:
      (A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or
      (B) causes the child to expose the child's anus or any part of the child's genitals.

[3] (b) It is an affirmative defense to prosecution under this section that the actor:
    (1) was not more than three years older than the victim and of the opposite sex;
    (2) did not use duress, force, or a threat against the victim at the time of the offense; and
    (3) at the time of the offense:
      (A) was not required under Chapter 62, Code of Criminal Procedure, to register for life as a sex offender; or
      (B) was not a person who under Chapter 62 had a reportable conviction or adjudication for an offense under this section.

outside of monogamous relationships. (App. at p. 32). LISD's policy precludes a discussion of the sexual activity itself. (App. at p. 32.) LISD's position is promulgated by the Texas Medical Association. (App. at p. 36.) LISD takes, and Defendant took, at the time of the subject of this lawsuit, a neutral position in its application of the policy regarding sexual activity; that being, there should be none. (App. at p. 32.) LISD allowed no latitude for discretionary decisions or acts that could be made in this regard.

LISD and Defendant provide for the well-being of the student. In this regard, Defendant must encourage students to comply with Texas law, not to be in direct contravention of existing laws. Allowing clubs based on sexual activity would be in direct contravention of said laws.[2,3] The very definition of homosexual[4] and heterosexual[5] is defined by the type of sexual intercourse. Such activities, as well as even sexual contact, are precluded by state law.[2,3]

Further, the intended purposes of the group as stated in their letter to the Board dated November 6, 2002, (App. at p. 41) is "to educate those willing about non-heterosexuals" and "educate willing youth about safe sex, AIDS, hatred, etc." (App. at p. 41.) The group further stated in its letter, "We will not be the ones making the decisions about their sexuality and we will be working with other organizations, councilors [sic], etc. to provide the best help possible." (App. at

---

[4] By definition, "homosexual" is defined as:
> (1) of, relating to, or characterized by a tendency to direct sexual desire towards another of the same sex; and
> (2) of, relating to, or involving sexual intercourse between persons of the same sex.

*Miriam Webster Dictionary (2003)*

[5] By definition, "heterosexual" is defined as:
> (1) of, relating to, or characterized by a tende3ncy to direct sexual desire toward the opposite sex; and
> (2) of, relating to, or involving sexual intercourse between individuals of the opposite sex.

*Miriam Webster Dictionary (2003*

p. 41). Plaintiffs stated objectives and goals, by definition, were in violation of Texas law and in violation of the abstinence policy of LISD.

> **2)** **In light of the purpose served by the forum, the well-being exception is invoked because of the constitutionally permissible distinctions between children and adults.**

The Equal Access Act's limited open forum is present at both public schools and schools of higher education. However, the appropriate latitude given to such access between the two entities can be easily distinguished. University students are adults. University students, being of legal age, have the legal right to make decisions regarding their own sexual activity amongst themselves without fear of criminal penalties. In comparison, 12 through 17 year olds do not. TEX. PENAL CODE ANN. §21.11 (Vernon 2003).[2,3] University students are, for the most part, living independently from their parents. The university does not serve *in loco parentis* (in place of the parents). To the contrary, public school students are children who normally live with their parents, the parents exercise parental control, and the school itself serves *in loco parentis*. *Bd. of Educ. v. Pico*, 457 U.S. 853, 871-72 (1982). Cases recognize the obvious concern on the part of parents and school authorities acting *in loco parentis* to protect children. *See Ginzberg v. New York,* 390 U.S. 629 (1968) (upholding a New York statute banning the sale of sexually oriented material to minors, even though the material, which was questioned, was entitled to First Amendment protection with respect to adults); *Pico,* 457 U.S. at 871-872 (authority of public schools to remove books that are vulgar from a public school library where the books could be placed in a public library for adults). "The constitutional rights of students in public school are not automatically co-extensive with the rights of adults in other settings." *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 682 (1986). Even though the First Amendment

guarantees wide freedom in matters of adult speech, it does not follow that the same latitude must be permitted to children in a public school. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-342 (1985). A balancing test must be placed for the freedom of speech against society's countervailing interest in teaching students the boundaries of socially appropriate behavior as established by the school board. *Bethel Sch. Dist.*, 478 U.S. at 681.

Additionally, the courts have made multiple distinctions between the constitutional rights of children and of adults. School children are subject to less stringent requirements for searches than adults. *Shoemaker v. State*, 971 S.W.2d 178 (Tex. App. - Beaumont 1998). School children are also subject to dress codes if the local school board adopts a policy concerning the same. *Bastrop ISD v. Toungate*, 958 S.W.2d 365 (Tex. 1997). Moreover, school children are subject to drug testing for any extra-curricular activities in order to allow for participation in said activity. *Bd. of Educ. v. Earls*, 536 U.S. 822 (2002). It is clear that distinctions between children and adults are often proper when said decisions/policies are made with the well-being of the child's interests in mind.

Likewise, the State of Texas places restrictions on children which are not applicable to adults: operation of a motor vehicle, TEX. TRANSP. CODE ANN. § 729.001 ( Vernon 2003); legal right to consume alcohol, TEX. ALCO. BEV. CODE ANN. §§ 106.01-02 (Vernon 2003); access to weapons, TEX. PENAL CODE ANN. § 46.13 (Vernon 2003); no participation in gang membership, TEX. PENAL CODE ANN. § 22.015, 71.02 (Vernon 2003); children are placed under curfews, TEX. LOCAL GOVT CODE ANN § 351.903 (Vernon 2003); *Qutb v. Bartlett*, 11 F.3d 488 (5th Cir. 1993) (holding that curfew for minors did not violate Plaintiffs constitutional rights to association under the United States or Texas Constitution since the state had a compelling interest) and as previously mentioned

in depth, restrictions on sexual contact with a child and between children. Tex. Penal Code Ann. § 21.11 (Vernon 2003).[2,3] Further, greater provisions are made for the physical health or safety protection of minors in the Texas Family Code. Tex. Fam. Code Ann. § 262.001 (Vernon 2003).

The Equal Access Act's limited open forum applies to children as young as 12 years of age (seventh grade). Introducing matters of sex and sexual activity at such a young, tender age is not an appropriate forum. Allowing a group to organize to talk about matters of sexual activity, whether or not homosexual or heterosexual, is inappropriate. As an example, in order to protect the children, LISD filters all matters of sex coming in on the internet at school so that students cannot have access to this type of information. (App pp. 4, 10, 15.)

Permitting access to clubs which discuss sex, sexual activity and sexuality could lead to requests for access by other clubs dealing with other sexual matter, such as the Beastiality Club, the Prostitute Club, and the Gigilo Club. Likewise, any club based on an illegal act could claim access to public schools, such as the Marijuana Club, Kids for Cocaine, and Drinking Clubs. By not allowing access for clubs based on sexual and/or illegal conduct, Defendant is protecting its students. Defendant should be able to deny access to these groups based on state law, Board policy and the well-being of the students. Public schools must have the latitude to deny access under the Equal Access Act to groups which do not comply with compelling interests of the state, as well as state laws.

As a result of the difference in maturity and rights of college students and the young, the Supreme Court has held that it is a "distinction [that] warrants a difference in constitutional results." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987) (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S.

203, 253 (1963) (Brennan, J., concurring); *Bethel Sch. Dist.*, 478 U.S. at 675, 685 (1986). Therefore, restricting access to Plaintiffs under the well-being exception is an appropriate action.

In essence, it is clear that Defendant did not exclude Plaintiffs from access pursuant to the Equal Access Act based on viewpoint discrimination. Rather, it was based on State law and the neutral LISD policy concerning these sensitive subjects. Defendant had the authority to exclude the group based on the well-being exception to the Equal Access Act as the distinction between children compared to adults warrants a difference in application. *Edwards*, 482 U.S. at 584 n.5.

> **3)  There is no viewpoint discrimination and the Equal Access Act is not violated when invoking the exception for maintaining order.**

Defendant also invoked the exception to the Equal Access Act of maintaining order. Under Title IX, 20 U.S.C. § 1681(a) (2003), the District is liable when it acts with deliberate indifference to known acts of harassment in its programs or activities. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999). The United States Department of Education's Office of Civil Rights (OCR) gave its opinion and stated:

> "Although Title IX does not prohibit discrimination on the basis of sexual orientation, sexual harassment directed at gay or lesbian students that is sufficiently serious constitute sexual harassment prohibited by Title IX. Further, gender-based harassment is also a form of sex discrimination. Revised Sexual Harassment Guidance: Harassment of Student by School Employees, other Students or Third Parties. OCR, 1/16/2001."

A potential for this type of harassment due to meetings being held at the school could lead to a disruptive and potentially dangerous harassing incident to said students, which thus requires Defendant and LISD to maintain order.

In prior instances, the U.S. Supreme Court has discussed the content of students' speech. The *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503 (1969) case involved several public school students who wore armbands to school which signified their opposition to the war in Vietnam. The school had a rule banning armbands. *Id.* In this instance, the Supreme Court found an infringement of the students' constitutional right of free speech. However, the Court did not adopt an "anything goes" viewpoint. The Court emphasized that student expression in or out of class that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others, is, of course, not immunized by the constitutional guarantee of freedom of speech." *Id.* It is important to note that the *Tinker* case involved symbolic expression, which was meaningful to the students.

To the contrary, the U.S. Supreme Court ruled that expression with regards to sex is not entitled to constitutional protection. In *Bethel Sch. Dist.*, the Court found that a senior who used sexual innuendoes in a nominating speech during a voluntary school assembly for electing student body officers and was subsequently suspended from school as a result, had no violation of his right to freedom of speech when he was suspended. *Bethel Sch. Dist.*, 478 U.S. at 675. The Court upheld the sanctions against Fraser, noting that the school has an interest in having students express themselves in an acceptable manner. *Id.* Just as the Supreme Court held that sexually explicit speech in an educational setting was not protected in *Bethel Sch. Dist.*, this Court should likewise find the same in this case. *Id.*

Thereafter, in 1988, the U.S. Supreme Court continued and broadened its view on this matter when it ruled in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), that school districts have broad censorship power over school newspapers where the offensive language was sexual in nature.

The reasonableness of the individual school administrator's decision of appropriateness was supported by the fact that such "content" could be censored in the manner the school so acted. *Id.* at 569. The Court extended this control and censorship to "other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." *Id* at 569.

Just as the present case involves minors in public school, both of the cases above were limited to the public school setting and did not apply to a university setting; thus greater control/censorship was held to be constitutional. Therefore, Defendant did not exercise viewpoint discrimination and, in light of the forum, reasonably chose to deny access on the basis of the exception of maintaining order.

> **b.** **Defendant did not violate Plaintiffs' First Amendment right of speech and association since there was a compelling state interest.**

The First Amendment to the United States Constitution provides for freedom of speech, as well as freedom of association. These rights to associate for expressive purposes and for freedom of speech are not absolute. The right may be infringed upon when justification is to serve a compelling state interest. *See Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). In this case, The United States Jaycees attempted to pull the charters of two of its chapters because women were allowed to participate as members. The Court found that there was a compelling interest of the state in eradicating discrimination against its female citizens. Therefore, that interest justified its overriding the male members' associational freedoms. *Id.* at 3247-48.

Likewise, the Court found a compelling state interest in *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646 (1995). Vernonia School Districts' drug testing policy was found to be valid even though

it violated the Fourth Amendment. The United States Supreme Court held that student athletes were not entitled to full Fourth Amendment protections regarding U.S. Constitutional Amendments with regard to being required to submit to suspicionless drug testing on the basis that state's interest in preventing drug addiction among students was compelling. The Court discussed the true immediacy and nature of a governmental issue. *Veronia Sch. Dist.,* 515 U.S. at 661. The Court defined a compelling interest as one that "appeared important enough to justify the particular search in light of other factors." *Id.* The Court found that the nature of the concern was compelling because deterring drug use by our school children is of utmost concern. *Id.* The Court also found that a child's school years were a time when the "physical, psychological and addictive effects of drugs are most severe." *Id.* They compared children to adults and found that they had nervous systems that were more critically impaired than adults; childhood losses in learning were lifelong and profound and that children can become more chemically dependent quicker than adults. *Id.*

*Veronia* was expanded to include those participating in all extracurricular activities in *Bd. of Educ. v. Earls*, 536 U.S. 882 (2002). A compelling interest was found in protecting the students' safety and health since drug use was an important governmental concern. *Id.* at 827.

Just as protection from illegal drug use is a compelling state interest, likewise, there is a compelling state interest in preventing groups based on sex, sexual content and sexual activity from gaining access and recognition at a public secondary school. Defendant and LISD's compelling state interest and that of any other school district is for the health and well-being of the children. It is of utmost importance to protect the students' mental health and physical well-being resulting from teen

pregnancy, sexually transmitted diseases and removal from the educational setting as a result. Discouraging sexual activity of minors clearly meets the compelling interest test.

Constitutional freedoms are not co-existence with the rights of adults in other settings. *Bethel Sch. Dist.,* 478 U.S. at 682. Thus, the balancing test must be invoked to determine whether the freedom of speech and association outweighs society's countervailing interest in teaching students the boundaries of socially appropriate behavior. *Id* at 681. Applying the balancing test to the facts at hand, it is clear that Defendant did not violate Plaintiffs' constitutional rights as LISD and Defendant have a compelling state interest to protect the health of the schoolchildren and to discourage sexual activity of the children, especially that which is illegal. This compelling interest overrides Plaintiffs' free speech and association rights. In summation, Justice Black, in his dissenting opinion in *Tinker,* and later affirmed in *Bethel Sch. Dist.,* wrote:

> "I wish, therefore, . . . to disclaim any purpose . . . to hold that the Federal Constitution compels the teachers, parents, and elected school officials to surrender control of the American public school system to public school students."

393 U.S. at 526.

### 2. Qualified immunity is mandated as Defendant's conduct was objectively reasonable.

Defendant incorporates by reference the arguments made hereinabove in this Brief as if fully set forth herein. If the Court disagrees with Defendant and finds that Defendant violated a clearly established constitutional right, the Court must then look at the second inquiry to determine if qualified immunity exists, and that is whether or not Defendant's conduct was objectively reasonable "in light of the legal rules clearly established at the time of the incident in issue." *See Hassan v. Lubbock ISD,* 55 F.3d 1075, 1079 (5th Cir. 1995). The proper inquiry is whether a reasonable official

would know that the act in question was unlawful. *Creighton*, 483 U.S. at 635, 640. It has been determined that when the court has a clear picture of what occurred during an incident giving rise to the qualified immunity defense, the question of reasonableness becomes one of law. *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Further, another way to phrase the inquiry is whether or not a reasonable official would believe his conduct to be "deliberately indifferent" in violation of the United States Constitution. *Alton v. Hopgood*, 994 F.Supp. 827, 835 (S.D. Tex. 1998).

As set forth above, when governmental officials are sued in their individual capacities, they are entitled to a presumption of qualified immunity from suit. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). In order to overcome this presumption, the Plaintiffs have the burden to prove that no reasonable similarly situated official could have considered the conduct of the governmental official to be unlawful under the circumstances known to him at the time. *Creighton*, 483 U.S. at 640-641; *See also Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). Further, the reasonableness inquiry of an official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *King v. Chide*, 974 F.2d 653, 657 (5th Cir. 1992) (quoting *Pfannstiel* at 1185). It is important to note that, if reasonable public officials could differ on whether or not the defendant's actions were lawful, the defendant is entitled to qualified immunity. *Pfannstiel*, 918 F.2d at 1183. The facts and evidence easily establish the reasonableness of Defendant's and LISD's actions. To find otherwise would require Defendant to violate State laws as well as not protect the well-being of the minor students. Again, there is no evidence to support a claim that Defendant and LISD were deliberately indifferent.

The conduct and bases of Defendant's decision to deny access as stated hereinabove lends itself directly to the reasonableness of Defendant's actions. In *Hazelwood School District v. Kuhlmeier*, the United States Supreme Court held that a school must be able to set high standards for its students and further, may refuse to allow actions that do not meet those standards. 484 U.S. at 271-72. In setting such standards and making decisions related thereto, "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics, which might range from the existence of Santa Clause in an elementary school setting to the particulars of teenage sexual activity in a high school setting." *Id* at 272. Moreover, the Court determined that schools "must retain the authority to refuse to sponsor student speech that might reasonably be perceived to advocate ... irresponsible sex, or conduct otherwise inconsistent with 'the shared values of a civilized social order,' or to associate the school with any position other than neutrality on matters of political controversy." *Id.* (citing *Bethel School District*, 478 U.S. at 683). In *Hazelwood*, the Court held that the principal could reasonably conclude from the totality of the facts, as he knew them, that the school newspaper articles at issue (dealing with pregnancy and divorce) should be deleted from the school paper. Due to the reasonableness of his actions under the circumstances present at the time, the Court held that he did not violate the constitutional rights of the student plaintiffs.

Defendant's actions were likewise objectively reasonable based on the facts and circumstances made the basis of this suit. The existing state laws, the differences between freedom of speech and association rights of children as compared to minors, the school district's policy on abstinence, and Defendant's and LISD's neutral approach to all matters regarding sex, sexual

activity, sexual contact and sex in general support the reasonableness of Defendant's actions. Clearly, the evidence supports a finding that Defendant's actions and decisions were reasonable and within his permissible authority. (App. at p. 2-6). Defendant based his reasonable decisions and actions on a legal and proper foundation, and as such, there was no violation of Plaintiffs' rights, and the cloak of qualified immunity is proper.

Moreover, since there was no law directly on point in the United States Supreme Court or the Fifth Circuit at the time, reasonable officials standing in the shoes of Defendant could not differ in their conclusions that their actions would not create constitutional violations. As a result, Defendant is entitled to qualified immunity. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Therefore, Defendant's Motion for Summary Judgment should be granted.

## IV.

## CONCLUSION

Defendant is entitled to qualified immunity on the basis that he did not violate a clearly established constitutional or statutory right and that his conduct was objectively reasonable in light of the laws and policies clearly established at the time of the denial of the access. Thus, Plaintiffs' claims for violations pursuant to the Equal Access Act, 20 U.S.C. § 4071 (2003), *et seq*, violations of Plaintiffs' First and Fourteenth Amendments right to the United States Constitution of freedom of expression and association, violations of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1988 (2003), and declaratory relief pursuant to 28 U.S.C. §§ 2201-02 (2003), should fail and Defendant's Motion for Summary Judgment on the basis of qualified immunity should be in all things granted, as to all causes of action.

WHEREFORE, PREMISES CONSIDERED, Defendant, Jack Clemmons, prays his Motion for Summary Judgment be granted on the basis of qualified immunity.

Respectfully submitted,

McWHORTER, COBB AND JOHNSON, L.L.P.
1722 Broadway
Post Office Box 2547
Lubbock, Texas 79408-2547
806/762-0214
806/762-8014 (FAX)

Ann Manning
State Bar No. 12950100
Timothy T. Pridmore
State Bar No. 00788224
R. Michael McCauley, Jr.
State Bar No. 00797030

By: _____
Ann Manning

ATTORNEYS FOR DEFENDANT
JACK CLEMMONS, Ed.D.

## CERTIFICATE OF SERVICE

This is to certify that on this the 6th day of August, 2003, a true and correct copy of the above and foregoing document has been sent by certified mail, return receipt requested to:

F. Brian Chase
LAMBDA Legal Defense
and Education Fund, Inc.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
*CM/RRR #7000 1530 0005 4044 3444*

Kevin D. McHargue
Monty Wade Sullivan
Carla M. Burke
Scott L. Frost
Chris J. Panatier
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
*CM/RRR #7000 1530 0005 4044 3505*


_____
ANN MANNING