# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

YVONNE CAUDILLO by next friend, )
Brenda Caudillo; MIRAH EPSTEIN )
CURZER by next friend, Howard Curzer; )
and LUBBOCK HIGH SCHOOL GAY )
STRAIGHT ALLIANCE, an )
unincorporated association; )
                                      )
           **Plaintiffs** )
vs. )      Civil Action No. 5-03 CV 0165-C
                                       )
LUBBOCK INDEPENDENT SCHOOL )
DISTRICT; WAYNE HAVENS, in his )
official capacity as Acting Superintendent of )
Lubbock Independent School District; DR. )
JACK CLEMMONS, individually; FRED )
HARDIN, in his official capacity as )
Assistant Superintendent for Secondary )
Schools of Lubbock Independent School )
District; )
                                      )
           **Defendants.** )
                                      )

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

SEP 2 9 2003

CLERK, U.S. DISTRICT COURT
By _____
                **Deputy**

---

### Plaintiffs' Brief in Support of Response
### to Defendant Jack Clemmons's Motion for Summary Judgment

---

**LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.**
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
(214) 219-8585 telephone
(214) 219-4455 facsimile
By: F. BRIAN CHASE
Louisiana Bar Number 23450
Florida Bar Number 996653

**Attorney for Plaintiffs**

**Table of Contents**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Argument And Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.        Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.      Clemmons Violated the Plaintiffs' Clearly Established right to
           Freedom of Speech. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           A.  Students Have a Clearly Established Constituttional Right to Discuss
                Issues of Public Concern, Including Issues Related to Human
                Sexuality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           B.  Clemmons Had No Basis for Predicting that the Lubbock GSA Would
                Substantially Interfere with the Work of the School or Impinge on the
                Rights of Others. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

           C.  Clemmons Conduct Was Not Justified by the Fact that Plaintiffs
                Were Minors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           D.  Clemmons Has No Basis for Asserting that Plaintiffs Violated
                State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

           E.  Clemmons Violated Plaintiffs' Clearly Established Constitutional
                Right To Be Free From Viewpoint Discrimination. . . . . . . . . . . . . .17

    III.    Clemmons Violated Plaintiffs' Clearly Established Statutory Rights
           Under the Equal Access Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    IV.    Clemmons's Conduct Was Objectively Unreasonable. . . . . . . . . . . . . . 22

    V.    Conclusion and Prayer For Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Table of Authorities

**Cases:**

*Austin v. Johnson,* 328 F.3d 204 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Barrow v. Greenville Indep. Sch. Dist.,* 332 F.3d 844 (5th Cir. 2003) . . . . . . . . . . . . . .4, 5

*Bethel Sch. Dist. v. Fraser,* 478 U.S. 675 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Blackwell v. Issaquena County Bd. of Ed.,* 363 F.2d 749 (5th Cir. 1966) . . . . . . . . . . . . 6

*Bd of Ed. v. Pico,* 457 U.S. 853 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Bd. of Ed. of Westside Cmty Sch. v. Mergens,* 496 U.S. 226 (1990) . . . . . . . . . . . . . . . . .8

*Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ.,*
 258 F.Supp.2d 667 (E.D. Ky. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 22

*Brandenburg v. Ohio,* 395 U.S. 444 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Burnside v. Byars,* 363 F.2d 744 (5th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Butts v. Dallas Indep. Sch. Dist.,* 436 F.2d 728 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . .10

*Chiu v. Plano Ind. Sch. Dist.,* 260 F.2d 330 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . .17

*Clark v. Dallas Ind. Sch. Dist.,* 806 F. Supp. 116 (N.D. Tex. 1992) . . . . . . . . . . . . . . . 6, 8

*Colin v. Orange Unified Sch. Dist.,* 83 F. Supp. 2d 1135 (C.D. Cal. 2000) . . . . .20, 21, 22

*East High Gay/Straight Alliance v. Bd. of Educ.,*
 81 F.Supp.2d 1166 (D. Utah 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*East High Sch. Prism Club v. Seidel,* 95 F.Supp.2d 1239 (D. Utah 2000) . . . . . . . . . . . .20

*Felton v. Polles,* 315 F.3d 470 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5

*Franklin Cent. Gay/Straight Alliance v. Franklin Tp. Cmty Sch. Corp.,*
 2002 WL 32097530 (S.D. Ind. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Gay Alliance of Students v. Matthews,* 544 F.2d 162 (4th Cir. 1976) . . . . . . . . . . . . . . . 17

*Gay Lib v. Univ. of Mo.,* 558 F.2d 848 (8th Cir. 1977),
 *cert. denied,* 434 U.S. 1080 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*,
    262 F.Supp.2d 1088 (E.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 22

*Gay Students Org. v. Bonner*, 509 F.2d 652 (1st Cir. 1974) . . . . . . . . . . . . . . . . . . . . .17

*Gay Student Services v. Texas A & M Univ.*, 737 F.2d 1317
    (5th Cir. 1984), *cert. denied*, 471 U.S. 1001 (1985) . . . . . . . . . . . . . . . . . . . . .16

*Ginsberg v. New York*, 390 U.S. 629 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) . . . . . . . . . . . . . . . . . . . . . . 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988) . . . . . . . . . . . . . . . . . . . .8

*Healy v. James*, 408 U.S. 169 (1972 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hope v. Pelzer*, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*,
    508 U.S. 384 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Lubbock Civil Liberties Union v. Lubbock Indep. Sch. Dist.*,
    669 F.2d 1038 (5th Cir. 1982), *cert. denied*, 459 U.S. 1155 (1983) . . . . . . . . . .20

*New Jersey v. TLO*, 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) . . . . . . . . . . . . . 17

*Shanley v. Northeast Indep. Sch. Dist.,* 462 F.2d 960 (5th Cir. 1972) . 7, 10, 12, 13, 14, 15

*Student Coalition for Gay Rights v. Austin Peay State Univ.*,
    477 F. Supp. 1267 (M.D. Tenn. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tinker v. Des Moines Indep. Cmty Sch. Dist.*, 393 U.S. 503 (1969) . . . . . . . . . . . .6, 11, 19

*Univ. of S. Miss. Chapter of Miss. Civil Liberties Union v.*
    *Univ. of S. Miss.*, 452 F.2d 564 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Westside Cmty Bd Of Educ. v. Mergens*, 496 U.S. 226 (1990) . . . . . . . . . . . . . . . . . .20, 21

*Williams v. Kaufman County*, 2003 WL 21962582 (5th Cir. 2003) . . . . . . . . . . . . . . . .22

*W. Va. State Bd of Ed. v. Barnette*, 319 U.S. 624 (1943) . . . . . . . . . . . . . . . . . . . . . . . . 19

**Statutes:**

20 U.S.C.A. § 4071, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 20

Tex. Gov't Code § 411.172(a)(2) (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Tex. Elec. Code § 11.002(1) (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Miscellaneous:**

Ray Glass, *Gay Students Seek OK to Post Flyers*, Lubbock
          Avalanche-Journal, Nov. 14, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 12

Ray Glass, *Gay Student Group Makes Case Before
          School Board*, Lubbock Avalanche-Journal, Nov. 14, 2002. . . . . . . . . . . . . . . . . .2

Fellowship of Christian Athletes Ministry Leader Application. . . . . . . . . . . . . . . . . . . . .2

National Parent Teacher Association, *Understanding
          Diversity: Ideas, Activities, and Best Practices.* . . . . . . . . . . . . . . . . . . . . . . . .12

Centers for Disease Control, *Comprehensive HIV
          Prevention Messages for Young People.* . . . . . . .  . . . . . . . . . . . . . . . . . . . 18

Young Democrats of America Platform on Health and Social Issues. . . . . . . . . . . . . . .21

Friedrich Nietszche, *Beyond Good and Evil.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Friedrich Nietszche, *Thus Spake Zarathustra.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| YVONNE CAUDILLO by next friend, Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend, Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association; | ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | |
| | ) | Civil Action No.  5-03 CV 0165 - C |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

---

**Plaintiffs' Brief in Support of Response
to Defendant Jack Clemmons's Motion for Summary Judgment**

---

### Factual Background

The Lubbock Gay Straight Alliance ("Lubbock GSA") was formed in the fall of 2002 by

a group of students at the Lubbock High School ("LHS").[1] Members of Lubbock GSA,

including the individually named Plaintiffs, sought permission to post informational fliers and to

meet during non-instructional time as a non-curricular student group in order to discuss social

and political issues of interest to them and to plan and perform community service projects.

---

[1]   The students originally referred to the Lubbock Gay Straight Alliance (GSA) as "Gay and Proud Youth" or "GAP Youth," but later changed the name to "Lubbock High School Gay Straight Alliance" to better reflect the fact that Lubbock GSA welcomes heterosexual students as well as gay, lesbian and bisexual students.

Defendant Jack Clemmons, who was at that time Superintendent of Schools for Lubbock

Independent School District ("LISD"), denied the request.

In response to discovery requesting communications related to the decision, Clemmons

referred Plaintiffs to newspaper articles.[2] According to these articles, Clemmons's stated reason

for denying the students' request was that their opinions would cause disruption, comparing the

group to "those sympathetic to the Ku Klux Klan, al-Qaida or skinheads."[3] Clemmons further

stated that "[i]f we allowed this group access to the campus, then we would have to turn right

around and be faced with an anti-gay group wanting access to our campus."[4]

In fact, at least one anti-gay group does have access to the LHS campus. The Fellowship

of Christian Athletes ("FCA") is an approved non-curricular group at LHS.[5] The FCA requires

its volunteers to agree that "[n]either heterosexual sex outside of marriage nor any homosexual

act constitute an alternate lifestyle acceptable to God."[6] In a letter to Clemmons's Assistant

Superintendent, Fred Hardin, faculty member Joseph Schottland pointed out that allowing the

FCA to advertise on campus while denying the same right to gay and lesbian students "would be

unfair, hypocritical and impermissibly discriminatory."[7] In a subsequent letter, Mr. Schottland

cautioned that "given both the stated policy of LISD and the current practice with regards to

extracurricular groups such as . . . FCA, the district is on tenuous legal ground in denying G.A.P.

[Lubbock GSA] their request for equal access."[8]

---

[2] *See* Defendant, Dr. Jack Clemmons's Answers, Responses and Objections to Plaintiffs' Interrogatories, Requests for Admission, and Requests for Production to Defendants at 19 (App. at 37).

[3] Ray Glass, *Gay Students Seek OK to Post Flyers*, Lubbock Avalanche-Journal, Nov. 14, 2002 (App. at 42).

[4] Ray Glass, *Gay Student Group Makes Case Before School Board*, Lubbock Avalanche-Journal, Nov. 14, 2002 (App. at 45).

[5] Defendant, Dr. Jack Clemmons's Answers, Responses and Objections to Plaintiffs' Interrogatories, Requests for Admission, and Requests for Production to Defendants at 13 (App. at 37).

[6] FCA Ministry Leader Application (App. at 48).

[7] Letter dated Sept. 9, 2002 (App. at 53).

[8] Letter dated Nov. 20, 2002 (App. at 57).

Clemmons himself acknowledged that the school district might have to exclude the FCA and other groups, explaining that "[o]ne of the things we have to evaluate is what would our community want us to do. What would the conservative Lubbock community want us to do as far as denying access to youth groups like Fellowship of Christian Athletes or other groups that are currently meeting."[9] In deference to the "conservative Lubbock community," Clemmons chose to let the FCA continue meeting on campus while prohibiting the Lubbock GSA from doing so.

Clemmons has moved for summary judgment, asserting the defense of qualified immunity. Clemmons maintains that he was legally entitled to prohibit the formation of the Lubbock GSA because (1) "there is no constitutional right for a group to be allowed to associate when the essential activity underlying the group's formation is violative of state law;"[10] (2) LISD policy "entails a prohibition of discussions in the curriculum of any issues with regard to sexual contact, preventions of pregnancy and diseases other than abstinence;"[11] (3) LISD was permitted to "deny recognition to any organization that discussed sex, sexual orientation, sexual activity or birth control in any regard, due to the fact that these students are minors;"[12] (4) "speech with sexual content was impermissible in the school setting and . students did not have the constitutional right for freedom of speech or association in this context;"[13] and (5) meetings of the Lubbock GSA "could lead to harassing incidents for the students."[14]

---

[9]  Ray Glass, *Gay Student Group Makes Case Before School Board*, Lubbock Avalanche-Journal, Nov. 14, 2002 (App. at 42).

[10]  Affidavit of Jack Clemmons (App. at 58).

[11]  *Id.* (App. at 59).

[12]  *Id.* (App. at 60).

[13]  *Id.* (App. at 60).

[14]  *Id.* (App. at 61).

Each of the proffered justifications for Clemmons's conduct has been considered and

squarely rejected by the Northern District of Texas, the Fifth Circuit, and the United States

Supreme Court.  Based on case law reaching back nearly 50 years, no reasonable school official

could have believed that Clemmons's conduct was permitted by the Constitution or the Equal

Access Act.  Clemmons is not entitled to qualified immunity as a matter of law because his

objectively unreasonable conduct violated the students' clearly established rights to freedom of

speech and freedom of association under the First Amendment, as well as their clearly

established statutory rights under the Equal Access Act.[15]

## Argument And Authorities

### I.  Standard Of Review

The defense of qualified immunity, which shields government officials from civil liability

for damages based upon the performance of discretionary functions, cannot be invoked if the

official's acts violated clearly established law at the time of the incident.[16]  Courts use a two-step

test to determine whether a defendant is entitled to qualified immunity.[17]  First, viewing the facts

in the light most favorable to the plaintiff, the plaintiff must have alleged a violation of a clearly

established constitutional or federal statutory right, and secondly, it must be demonstrated that

the violation was objectively unreasonable.[18]

Here, Plaintiffs have certainly alleged that Clemmons violated Plaintiffs' federal statutory

rights guaranteed under the Equal Access Act, 20 U.S.C.A, section 4071, *et seq.*, and their

constitutional rights guaranteed under the First Amendment to the United States Constitution.

Whether those rights were clearly-established "does not turn on the existence of a court decision

---

[15]  20 U.S.C.A. § 4071.

[16]  *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002).

[17]  *Id*; *Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844, 846 (5th Cir. 2003).

[18]  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Barrow*, 332 F.3d at 846.

determining that conduct identical to that which is at issue here is unlawful."[19] "For a constitutional [or federal statutory] right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[20] In showing that their rights were clearly established, Plaintiffs may rely either on "cases of controlling authority in [the] jurisdiction at the time of the incident" or on "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."[21] As demonstrated in sections II and III below, both the law of the Fifth Circuit and the consensus of cases nationwide demonstrate that Clemmons has violated the clearly-established rights of Plaintiffs.

The second part of the test requires the plaintiff to show that the defendant's conduct was objectively unreasonable in light of clearly established law at the time that the defendant committed the wrongful act.[22] This part of the analysis, as set forth in Section IV below, focuses both on the state of the law at the time of the incident, as well as the particulars of the conduct and the factual setting in which the conduct occurred.[23] Examination of these factors reveals that Clemmons's conduct was not objectively reasonable, and therefore, he cannot escape liability for his constitutional violations by asserting qualified immunity.

---

[19]  *Barrow*, 332 F.3d at 848.

[20]  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

[21]  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003).

[22]  *Harlow*, 457 U.S. at 818; *Barrow*, 332 F.3d at 846.

[23]  *Felton*, 315 F.3d at 478.

## II.    Clemmons Violated Plaintiffs' Clearly Established Right To Freedom Of Speech.

### A.    Students Have a Clearly Established Constitutional Right to Discuss Issues of Public Concern, Including Issues Related to Human Sexuality.

It is well established that public school students have a clearly established right to freedom of speech under the First Amendment.[24]   School administrators may curtail students' First Amendment rights only if the administrators can demonstrate that the students' activities would "substantially interfere with the work of the school or impinge upon the rights of other students."[25]   By way of example, courts have approved limits on student speech when it is accompanied by some form of disruptive conduct, such as forcing buttons on unwilling students,[26] throwing buttons though windows,[27] interfering with students trying to get to class,[28] gathering large crowds,[29] or using bullhorns.[30]   Indeed, the Fifth Circuit has expressed doubt that mere speech, not accompanied by improper conduct, could ever justify restriction of students' First Amendment rights.[31]   In the absence of a "specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views.  As Judge Gewin, speaking for the Fifth Circuit, said, school officials cannot suppress 'expressions of feelings with which they do not wish to contend.'"[32]

It is well settled in the Fifth Circuit that high school students' freedom of speech extends to controversial topics such as birth control and illegal drug use.  In *Shanley v. Northeast*

---

[24]   *See, e.g., Tinker v. Des Moines Indep. Cmty Sch. Dist.*, 393 U.S. 503, 506 (1969); *Burnside v. Byars*, 363 F.2d 744, 747-48 (5th Cir. 1966).

[25]   *Tinker*, 393 U.S. at 509.

[26]   *Blackwell v. Issaquena County Bd of Ed.*, 363 F.2d 749, 753 (5th Cir. 1966).

[27]   *Id.*

[28]   *Clark v. Dallas Indep. Sch. Dist.*, 806 F. Supp. 116, 121 (N.D. Tex. 1992).

[29]   *Id.*

[30]   *Id.*

[31]   *See Burnside*, 363 F.2d at 748 ("Thus it appears that the presence of 'freedom buttons' did not hamper the school in carrying on its regular schedule of activities; **nor would it seem likely that the simple wearing of buttons unaccompanied by improper conduct would ever do so**.") (emphasis added).

[32]   *Id.* at 749.

*Independent School District*,[33] the Fifth Circuit addressed the allegedly objectionable content of

an "underground student newspaper" called the "Awakening":

> The two 'controversial' subjects in the 'Awakening' are a statement advocating a
> review of the laws regarding marijuana and another statement proffering
> information on, among other things, birth control.  We find the allegedly
> outrageous and 'controversial' nature of these two subjects rather peculiar. . . .
> We might add that a casual glance at any public medium would assure even the
> most doubtful observer that the general subjects of marijuana and birth control are
> rather widely-discussed. It appears odd to us that an educational institution would
> boggle at 'controversy' to such an extent that the mere representation that students
> should become informed of two widely-publicized, widely-discussed, and
> significant issues that face the citizenry should prompt the board to stifle the
> content of a student publication.[34]

Such topics are even more widely discussed today.  Subjects related to human

sexuality—including safe sex, birth control, homosexuality, sexual harassment, abortion, and

other issues—are discussed every day in widely read newspapers, television news programs,

legislative hearings and public meetings of every type.  The court in *Shanley* held that "[i]t is

incredible to us that in 1972 the First Amendment was deemed inapplicable under these

circumstances to high school students living at the threshold of voting and dying for their

country."[35]  It is even more incredible that a school official would make the argument in 2003,

more than 30 years after *Shanley* was decided.

In direct contradiction to *Shanley*, Clemmons asserts the general authority of school

officials to "deny recognition to any organization that discussed sex, sexual orientation, sexual

activity or birth control in any regard, due to the fact that these students are minors."[36]  The only

authority offered for this proposition in Clemmons's Brief are two manifestly inapplicable cases,

---

[33]   462 F.2d 960 (5th Cir. 1972).

[34]   *Id.* at 972.

[35]   *Shanley*, 462 F.2d at 973.

[36]   Affidavit of Jack Clemmons (App. at 57).

*Bethel School District v. Fraser*[37] and *Hazelwood School District v. Kuhlmeier.*[38] Clemmons

attempts to conflate two clearly distinct legal standards: the strict standards for regulating

student-initiated speech, set out in *Tinker*, as opposed to the less stringent standards for

regulating school-sponsored speech, set out in *Bethel* and *Hazelwood*. As the Northern District

of Texas explained more than a decade ago, *Bethel* and *Hazelwood* apply only to school-

sponsored speech and are "easily distinguished" from cases involving voluntary, student-initiated

speech, such as this one.[39] *Bethel* involved a "**school-sponsored** educational program which

students were required to attend."[40] The Court accepted the school district's argument that it

"had an interest in protecting an essentially captive audience of minors from lewd and indecent

language in a setting **sponsored by the school**."[41] *Hazelwood* involved a school-sponsored

newspaper, and the Court held that a school could exercise control over the "style and content of

student speech in **school-sponsored** expressive activities."[42]

The Supreme Court has explained on several occasions that allowing a group to meet on

campus does not imply sponsorship, approval or endorsement by the school.[43] As the court

explained in *Clark*, such "voluntary, student-initiated" speech is governed by the standards of

*Tinker*, not the standards for school-sponsored speech set out in *Bethel* or *Hazelwood*.[44] The

---

[37]    478 U.S. 675 (1986).

[38]    484 U.S. 260 (1988).

[39]    *Clark v. Dallas Indep. Sch. Dist.*, 806 F. Supp. 116, 119-20 (N.D.Tex. 1992) (noting that both *Bethel* and *Hazelwood* involved restriction of activities that were in some way sponsored by the school.").

[40]    *Bethel*, 478 U.S. at 677 (emphasis added).

[41]    *Id.* at 680 (emphasis added).

[42]    *Hazelwood*, 484 U.S. at 273 (emphasis added).

[43]    *See, e.g., Bd of Ed. of Westside Cmty Sch. v. Mergens*, 496 U.S. 226, 250 (1990) ("We think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis."); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 113-14 (2001).

[44]    *Clark*, 806 F. Supp. at 120.

---

Lubbock GSA's activities, which were not in any way sponsored or endorsed by the school, were entitled to full constitutional protection under *Tinker*.

### B. Clemmons Had No Basis for Predicting that the Lubbock GSA Would Substantially Interfere with the Work of the School or Impinge on the Rights of Others.

When, as in this case, the "restriction upon student expression takes the form of an attempt to predict in advance the content and consequences of that expression, it is tantamount to a prior restraint and carries a heavy presumption against its constitutionality."[45] In *University of Southern Mississippi Chapter of the Mississippi Civil Liberties Union v. University of Southern Mississippi*, Judge Wisdom authored an opinion upholding the right of a controversial civil rights group to meet on the campus of a public school, noting that refusing to allow the group to meet "is analogous to one attempting to prevent a particular group or individual from speaking on school premises" and noted that such "speaker bans" have been uniformly struck down.[46] The court concluded that "it is plainly incompatible with our constitutional system for a state-sponsored institution to permit some speakers but turn others away according to the orthodoxy or popularity of their views."[47] This reasoning is directly applicable to the present case, in which Clemmons has determined that a broad range of other views, including anti-gay views, may be expressed while pro-gay views are silenced.

The Fifth Circuit has emphasized that "there must be demonstrable factors that would give rise to any reasonable forecast by the school administration of 'substantial and material' disruption of school activities before expression may be constitutionally restrained. While this court has great respect for the intuitive abilities of administrators, such paramount freedoms as

---

[45] *Univ. of S. Miss. Chapter of Miss. Civil Liberties Union v. Univ. of S. Miss.*, 452 F.2d 564, 566 (5th Cir. 1971).
[46] *Id.* at 566.
[47] *Id.*

speech and expression cannot be stifled on the sole ground of intuition."[48]  When school officials

claim that students' activities will disrupt the school, "something more is required to establish

that they would cause 'disruption' than the ex cathedra pronouncement of the superintendent."[49]

In this case, the sole factual basis offered for Clemmons's prediction is that

"[a]dministrators went to the website of GAP Youth and found references to sex, sexual activity,

and sexual practice, as well as references to illegal drug use, referred to in the flier that GAP

Youth wanted to post on the school bulletin board.  In addition, there was serious concern for

the safety and well-being of the student members."[50]  In reality, the flier did not refer to sexual

activity or drug use of any kind.[51]  The flier merely gave the address of the website, which

contained links to other sites that addressed a variety of topics, including sexual orientation,

discrimination, sexual harassment, political action, and religion.  Mr. Schottland noted in his

letter to the Assistant Superintendent that "While some in LISD may find the personal lifestyle

of the target student group of these flyers objectionable, . . . the flyer itself is innocuous.

Allowing this group a few inches of wall space to post their flyers will not disrupt the smooth

operations of Lubbock High School."[52]

As discussed in *Shanley*, references to controversial subjects such as birth control or drug

use do not justify restrictions on students' First Amendment rights.  Nor can Clemmons justify

his actions based on his purported "concern of the safety and well-being of the student

members."  In *Tinker*, the Court explained that the "fear of a disturbance" does not justify such

curtailment, explaining that "in our system, undifferentiated fear or apprehension of disturbance

---

[48]  *Shanley*, 462 F.2d at 974.

[49]  *Butts v. Dallas Indep. Sch. Dist.*, 436 F.2d 728, 732 (5th Cir. 1971).

[50]  Defendant, Dr. Jack Clemmons's Answers, Responses and Objections to Plaintiffs' Interrogatories, Requests for Admission, and Requests for Production to Defendants at 19 (App. at 11).

[51]  *See* Proposed Flier (App. at 63).

[52]  Letter dated Sept. 9, 2002 (App. at 53).

is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society."[53]   In order to justify a prohibition on the expression of an opinion, school officials must show "something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."[54]

In *Burnside*, which involved the wearing of "freedom buttons" by African-American students in Mississippi, the Fifth Circuit observed that it was unlikely that mere speech, in the absence of some sort of disruptive conduct, would ever justify restriction of students' First Amendment rights.[55]   No doubt many Mississippi school officials in the 1960s regarded the civil rights movement as "disruptive," just as Clemmons regards the Lubbock GSA as disruptive. Such "fear or apprehension of disturbance" was not a basis for denying First Amendment rights in the 1960s, and it is not a basis for denying First Amendment rights today.

Clemmons has not identified any actual facts supporting his prediction that the Lubbock GSA meetings would be disruptive or pose a threat to the safety or well-being of the students. Gay-straight alliances meet at many other high schools throughout the country without disrupting

---

[53]   *Tinker*, 393 U.S. at 508-09 (citation omitted).

[54]   *Id.* at 509.

[55]   *See Burnside*, 363 F.2d at 748 ("Thus it appears that the presence of 'freedom buttons' did not hamper the school in carrying on its regular schedule of activities; **nor would it seem likely that the simple wearing of buttons unaccompanied by improper conduct would ever do so.**") (emphasis added).

the educational process, including over two-dozen schools in Texas.[56] The National Parent

Teacher Association recommends the formation of support groups for gay and lesbian students to

provide the students with "an open and safe environment where they can discuss their issues and

concerns."[57] In this case, the only statements that appear calculated to cause disturbance have

come from Clemmons himself, who publicly compared the student members of Lubbock GSA to

the Ku Klux Klan and al-Qaida.[58] Clemmons's publicly stated disapproval of the Lubbock

GSA's viewpoint is not a basis for denying the students' clearly established constitutional rights.

Even if Clemmons had a basis for believing that other students would cause a disruption,

that would not justify curtailment of the Plaintiffs' rights. The Supreme Court long ago rejected

the concept of a "heckler's veto" in *Terminiello v. City of Chicago.*[59] Clemmons assumes the

existence of such a "veto" in which threats of harassment serve as a basis for denying the

victim's constitutional rights. The Fifth Circuit has rejected that argument in no uncertain terms,

explaining that "those students who would reasonably exercise their freedom of expression

should not be restrained or punishable at the threshold of their attempts at expression merely

because a small, perhaps vocal or violent, group of students with differing views might or does

create a disturbance."[60] The legally permissible response to harassment is to educate, and if

necessary to discipline, potential offenders. Clemmons's proposed response—restricting the

rights of the potential victims—has no basis in law or reason.

---

[56]   Student and GSA Club Directory, http://www.glsen.org/templates/student/index.html?section=49

[57]   National Parent Teacher Association, *Understanding Diversity: Ideas, Activities, and Best Practices* (App. at 64).

[58]   Ray Glass, *Gay Students Seek OK to Post Flyers*, Lubbock Avalanche-Journal, Nov. 14, 2002 (App. at 42).

[59]   337 U.S. 1(1949).

[60]   *Shanley*, 462 F.2d at 974.

## C.   Clemmons's Conduct Was Not Justified by the Fact that Plaintiffs Were Minors.

The Supreme Court has recognized that "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."[61]  There has never been a decision supporting Clemmons's assertion that a school can prohibit discussion of "sex, sexual orientation, sexual activity, or birth control in any regard, due to the fact that these students are minors."[62]

Clemmons's logic—that the state can prohibit minors from **discussing** activities merely because the state can prohibit minors from **engaging in** those activities—is profoundly flawed. For example, the state prohibits those under 21 from carrying a concealed handgun.[63]  But the state could not prohibit young people from joining a group that supports gun rights or lobbying for changes in the gun laws.  The state prohibits those under 18 from voting.[64]  But the state cannot forbid young people to get involved in elections or join political parties.  Likewise, the state cannot prohibit minors from discussing abortion, birth control or other issues on the grounds that they are not permitted to engage in sexual activity.

Nor does the doctrine of *in loco parentis* authorize Clemmons to restrict First Amendment rights.  Clemmons cites *Board of Education v. Pico*,[65] but that decision dealt exclusively with the authority of schools to decide what books to offer in school libraries, and the decision specifically rejects the assertion that school boards have "absolute discretion" with

---

[61]   *Id.*

[62]   Affidavit of Jack Clemmons (App. at 58).

[63]   TEX. GOV'T CODE § 411.172(a)(2) (Vernon 1998).

[64]   TEX. ELEC. CODE § 11.002(1) (Vernon 2003).

[65]   457 U.S. 853 (1982).

respect to the books that students may read.[66] The Fifth Circuit has likewise held that school officials' assertion of parental authority over children's opinions "is an unconstitutional usurpation of the First Amendment" and overturned the school board's effort to make itself a "Super Parent."[67]

More recently, in *New Jersey v. TLO*,[68] the Supreme Court considered the argument that the doctrine of *in loco parentis* insulated school officials from constitutional challenges and noted that such reasoning was "in tension with contemporary reality and the teachings of this Court."[69] Citing *Tinker*, the Court noted that "[w]e have held school officials subject to the commands of the First Amendment" and explained that "school authorities are state actors for purposes of the constitutional guarantees of freedom of expression."[70] The Court's precedents would make it clear to a reasonable school official that he or she does not have an unfettered right to police the moral, political, or social views of students on any subject.

Clemmons also cites *Ginsberg v. State of New York*,[71] which has even less bearing on the issues in this case. In *Ginsberg*, the Court upheld a statute prohibiting the sale of material that "(i) predominantly appeals to the prurient, shameful or morbid interest of minors, and (ii) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and (iii) is utterly without redeeming social importance for minors."[72] The court in *Ginsberg* was addressing the off-campus sale of pornography to minors,

---

[66]  *Id.* at 869.

[67]  *Shanley*, 462 F.2d at 964-67.

[68]  469 U.S. 325 (1985).

[69]  *Id.* at 336.

[70]  *Id.*

[71]  390 U.S. 629 (1968).

[72]  *Id.* at 646.

not the on-campus discussion of controversial ideas.[73]  Although Clemmons no doubt finds

Lubbock GSA's viewpoints objectionable, Clemmons has not even alleged, much less proved,

that any of the group's speech was "obscene" under the standard applied in *Ginsberg* or any

other legally recognized standard.[74]

### D.    Clemmons Has No Basis for Asserting that Plaintiffs Violated State Law.

Clemmons asserts that "there is no constitutional right for a group to be allowed to

associate when the essential activity underlying the group's formation is violative of state law."[75]

Clemmons offers no support for this assertion, and it is both factually and legally incorrect.  As

an initial matter, none of the objectives of the Lubbock GSA violate any state law.  The Lubbock

GSA's stated goals are to:

> (1) provide guidance to youth who come to us to the best of our ability and when
>     we cannot provide help relay them to those who can.
> (2) Educate those willing about non-heterosexuals.
> (3) Improve the relationship between heterosexuals and homosexuals.
> (4) Help the community.
> (5) Increase rights given to non-heterosexuals.
> (6) Educate willing youth about safe sex, AIDS, hatred, etc.
> (7) Enhance the relationship between youth and their families."[76]

It is not, and never has been, illegal to pursue any of these political, social, and

educational goals.  It is emphatically not illegal to educate willing youth about "safe sex, AIDS,

hatred, etc."  If it were, school administrators and counselors throughout Texas who discuss such

issues with students every day would be criminals.  Plaintiffs have never proposed to engage in

any inappropriate or illegal conduct, nor to encourage others to do so.  On the contrary, Plaintiffs

---

[73]  *Id.*

[74]  *See Shanley*, 462 F.2d at 964 (students' discussion of birth control and other subjects could not "remotely be considered libelous, obscene, or inflammatory.").

[75]  Affidavit of Jack Clemmons (App. at 58).

[76]  App. at 68.

explicitly stated that "all members will be expected to be law abiding" and "[w]e will not be the ones making decisions about their sexuality."[77]

Clemmons's repeated false claims that Plaintiffs are violating the law reflect an unreasonable refusal to distinguish between speech and conduct, a distinction that is vital to the First Amendment.[78]  While the state can prohibit harmful conduct, the state can prohibit speech only if it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."[79]  Even before the Texas sodomy law was declared unconstitutional, the state clearly did not have the power to prohibit anyone from **discussing** homosexuality.  In *Gay Student Services v. Texas A & M University*,[80] which was decided when the Texas sodomy law was still in effect, the Fifth Circuit held that the formation of a gay and lesbian student group did not cross the "the 'critical line . . . between advocacy and action."[81]  Echoing *Tinker*, the court explained that "[t]he mere 'undifferentiated fear or apprehension' of illegal conduct . . . is not enough to overcome First Amendment rights, and speculation that individuals might at some time engage in illegal activity is insufficient to justify regulation by the state."[82]  The court emphasized that "while Texas law may prohibit certain homosexual practices, no Texas law makes it a crime to *be* a homosexual."[83]

---

[77]  App. at 68.

[78]  *See, e.g., Healy v. James*, 408 U.S. 169, 192 (1972 ) ("[T]he critical line for First Amendment purposes  must be drawn between advocacy, which is entitled to full protection, and action, which is not.").

[79]  *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

[80]  737 F.2d 1317 (5th Cir. 1984), *cert. denied*, 471 U.S. 1001 (1985).

[81]  *Id.* at 1328.

[82]  *Id.* at 1329.

[83]  *Id.* (emphasis in original).

Every court that has considered the issue has rejected the argument that state sodomy

laws override the First Amendment.[84]  Significantly, no court has ever endorsed Clemmons's

unreasonable belief that "there is no constitutional right for a group to be allowed to associate

when the essential activity underlying the group's formation is violative of state law."

### E.    Clemmons Violated Plaintiffs' Clearly Established Constitutional Right To Be Free From Viewpoint Discrimination.

It is "well settled that viewpoint discrimination is a clearly established violation of the

First Amendment in any forum."[85]  The government, including school districts, "may not

regulate speech based on its substantive content or the message it conveys."[86]  For purposes of

evaluating qualified immunity, students have a "clearly established" right under the First

Amendment "to be free from viewpoint discrimination."[87]

Clemmons claims that the LISD policy was "neutral" because it excluded any speakers

who disagreed with the LISD's abstinence-only policy.[88]  This is the same skewed definition of

"neutrality" rejected in *Lamb's Chapel v. Center Moriches Union Free School District*.[89]  In

*Lamb's Chapel*, school officials refused to let a religious group make a presentation, claiming

that it had a "neutral" policy of excluding all religious speech.[90]  The Court rejected this claim of

neutrality, explaining that the fact that "all religions and all uses for religious purposes are

treated alike . . . does not answer the critical question whether it discriminates on the basis of

viewpoint to permit school property to be used for the presentation of all views about family

---

[84]   *See, e.g.,Gay Students Org. v. Bonner*, 509 F.2d 652 (1st Cir. 1974); *Gay Alliance of Students v. Matthews*, 544 F.2d 162 (4th Cir. 1976); *Gay Lib v. Univ. of Mo.*, 558 F.2d 848 (8th Cir. 1977), *cert. denied*, 434 U.S. 1080 (1978); *Student Coalition for Gay Rights v. Austin Peay State Univ.*, 477 F. Supp. 1267 (M.D. Tenn. 1979).

[85]   *Chiu v. Plano Indep. Sch. Dist.*, 260 F.2d 330, 350 (5th Cir. 2001).

[86]   *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)).

[87]   *Id.* at 351.

[88]   Affidavit of Jack Clemmons (App. at 59).

[89]   508 U.S. 384 (1993).

[90]   *Id.* at 393.

---

issues and child rearing except those dealing with the subject matter from a religious standpoint."[91] The Court held that prohibiting particular perspectives on an otherwise includable subject is not only invalid but "plainly invalid."[92]

Clemmons claims that "LISD closed its limited open forum to all issues of sex and sexual activity for the well-being of its students,"[93] but there is no evidence that LISD actually did so. LISD did adopt an "abstinence-only" curriculum, but the speech of a non-curricular group does not fall within the curriculum. Any restrictions on the curriculum do not apply to student initiated speech. Clemmons has not identified any LISD policy that prohibits discussion of issues related to "sex and sexual activity," which would presumably include all discussion of abortion, sexual harassment, overpopulation, and other issues of vital public concern and would therefore violate the Constitution.

Even within the curriculum, LISD has not excluded the subject of human sexuality from discussion altogether.[94] LISD has simply prohibited the expression of certain perspectives on human sexuality, if those perspectives diverge from LISD's "abstinence-only" stance. The topic of safe sex, in particular the issue of "abstinence-only" education versus comprehensive sex education, is a matter of considerable public debate.[95] LISD has chosen one side of that debate within its curriculum, taking the position that "there is no such thing as safe sex outside of

---

[91]  *Id.*

[92]  *Id.* at 394.

[93]  Brief in Support of Motion for Summary Judgment at 7.

[94]  For example, the health textbook used by LHS discusses, among other topics, the difference between heterosexuality and homosexuality and the transmission of sexually transmitted diseases.  (App. at 69).

[95]  *See, e.g.,* Centers for Disease Control, *Comprehensive HIV Prevention Messages for Young People* (App. at 74__) (discussing differing views on teaching adolescents about safe sex).

monogamous relationships."[96]  Having taken that position, LISD now attempts to

unconstitutionally silence different points of view.

> More than 50 years ago, the United States Supreme Court explained:
>
> The Fourteenth Amendment, as now applied to the States, protects the citizen
> against the State itself and all of its creatures—Boards of Education not excepted.
> These have, of course, important, delicate, and highly discretionary functions, but
> none that they may not perform within the limits of the Bill of Rights. . . .
> Probably no deeper division of our people could proceed from any provocation
> than from finding it necessary to choose what doctrine and whose program public
> educational officials shall compel youth to unite in embracing.  [I]f there is any
> fixed star in our constitutional constellation, it is that no official, high or petty,
> can prescribe what shall be orthodox in politics, nationalism, religion, or other
> matters of opinion . . . ."[97]

In *Tinker*, the Court reaffirmed that students "may not be confined to the expression of

those sentiments that are officially approved."[98]  A school may not "confine the permissible

exercise of First Amendment rights to . . . supervised and ordained discussion in a school

classroom."[99]  High school students must be "trained through wide exposure to that robust

exchange of ideas which discovers truth 'out of a multitude of tongues, rather than through any

kind of authoritative selection.'"[100]

## III.   Clemmons Violated Plaintiffs' Clearly Established Statutory Rights Under The Equal Access Act.

In 1984 Congress enacted the Equal Access Act to address the right of high school

students to form student clubs.  The Equal Access Act makes it unlawful for any public

secondary school that receives federal assistance and which has a limited open forum "to deny

equal access or a fair opportunity to, or discriminate against any students who wish to conduct a

---

[96]  *See* Defendant Jack Clemmons's Brief in Support of Motion for Summary Judgment at 8.

[97]  *W. Va. State Bd of Ed. v. Barnette*, 319 U.S. 624, 641-42 (1943).

[98]  *Tinker*, 393 U.S. at 511.

[99]  *Id.* at 514.

[100]  *Id.* at 512 (citations omitted).

meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings."[101]  Congress intended to provide a "low threshold" for triggering the protections of the Equal Access Act, which occurs any time a school allows even one non-curriculum related student group to meet on school premises during non-instructional time.[102]  The protection granted by the Equal Access Act is intentionally broad and explicitly applies to all forms of speech.[103]

Plaintiffs' rights under the Equal Access Act were clearly established rights at the time that Clemmons violated those rights.  LISD concedes that at the time Clemmons denied Plaintiffs the right to meet, LISD accepted federal funds and had established a limited open forum in accordance with the Equal Access Act.[104]

Every court that has ever addressed the issue has concluded that the express language of the Equal Access Act requires public schools to treat gay-straight alliances the same as other clubs.[105]  In *Colin v. Orange Unified School District,* the court expressly considered and rejected the argument that a Gay/Straight Alliance would lead to sexual activity.[106]  The court went on to hold that the mere fact that school board members may be uncomfortable with, or disagree with,

---

[101]  20 U.S.C.A. § 4071(a).  Coincidentally, Congress enacted the Equal Access Act largely in response to a decision barring religious student groups from meeting during non-instructional time at Lubbock High School.  *See Lubbock Civil Liberties Union v. Lubbock Indep. Sch. Dist.,* 669 F.2d 1038 (5th Cir. 1982), *cert. denied,* 459 U.S. 1155 (1983).

[102]  *Mergens,* 496 U.S. at 240.

[103]  *Colin v. Orange Unified Sch. Dist.,* 83 F. Supp. 2d 1135, 1142 (C.D. Cal. 2000).

[104]  *See* Original Answer of the Lubbock Independent School District.

[105]  *See, e.g., Boyd County High Sch. Gay Straight Alliance v. Bd of Educ.,* 258 F.Supp.2d 667 (E.D. Ky. 2003); *Franklin Cent. Gay/Straight Alliance v. Franklin Tp. Cmty Sch. Corp.,* 2002 WL 32097530 (S.D. Ind. 2002); *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.,* 262 F.Supp.2d 1088 (E.D. Cal. 2001); *East High Sch. Prism Club v. Seidel,* 95 F.Supp.2d 1239 (D. Utah 2000); *East High Gay/Straight Alliance v. Bd of Educ.,* 81 F.Supp.2d 1166 (D. Utah 1999); *Colin,* 83 F.Supp.2d 1135.

[106]  *Colin,* 83 F.Supp.2d at 1135.

---

the views expressed by students in the gay/straight alliance did not give the school the authority to bar the club.[107]

Clemmons maintains that the Equal Access Act's acknowledgment of a school's authority to "maintain order" and "protect the well-being of students" vests him with discretion to bar student groups whose ideas he considers harmful. Clemmons offers no support for such an unreasonable interpretation, which allows the exception to swallow the rule. Courts have rejected the proposition that schools have unfettered discretion to reject student clubs under the Equal Access Act under the guise of maintaining order.[108]

The Supreme Court has observed that "Under the [Equal Access] Act, a school with a limited open forum may not lawfully deny access to a Jewish students' club, a Young Democrats club, or a philosophy club devoted to the study of Nietzsche."[109] Allowing such groups to meet necessarily involves allowing discussion of the types of ideas that Clemmons deems harmful to "order" and "well-being." For example, the Young Democrats take specific positions on issues involving safe sex practices, abortion, birth control, sexually transmitted diseases, and the right of gay and lesbian Americans to serve in the military.[110] Even the group studying Nietzsche will find arguments against LISD's abstinence-only policy.[111]

Clemmons's claim of a right to circumvent the express terms of the Equal Access Act in the name of "maintaining order" or "protecting the well-being of the students" has no basis in the language of the statute or the cases interpreting it. Indeed, discrimination by school officials

---

[107]   *Id.*

[108]   *Colin*, 83 F. Supp. 2d at 1142.

[109]   *Mergens*, 496 U.S. at 252.

[110]   Young Democrats of America Platform on Health and Social Issues (App. at 77).

[111]   See, e.g., Friedrich Nietszche, *Beyond Good and Evil*, Part III, Ch. 47 ("Wherever the religious neurosis has hitherto appeared on earth we find it tied to three dangerous dietary prescriptions: solitude, fasting and sexual abstinence."); Freidrich Nietszche, *Thus Spake Zarathustra*, Part I, Ch. 13 ("Do I counsel you to chastity? Chastity is a virtue with some, but with many almost a vice.").

against unorthodox or unpopular views was one of the evils that the statute was designed to remedy. Clemmons's argument, which would ignore the plain language of the Equal Access Act and Congress' intent, has been rejected by every other court to address it and should be rejected here as well.

## IV.    Clemmons's Conduct Was Objectively Unreasonable.

Clemmons has failed to identify any facts supporting his assertions that the meetings of the Lubbock GSA would substantially interfere with the school's operations, impinge on the rights of others, or otherwise create the type of serious harm that would justify restriction of the Plaintiffs' constitutional rights. His post hoc rationalizations of his conduct are uniformly unpersuasive. Based on the facts available to Clemmons at the time, no reasonable school official would have disregarded Plaintiffs' rights under the First Amendment and the Equal Access Act.

If a right is clearly established enough to give a government actor fair warning that his or her actions are unconstitutional, then the actor's violation of that right cannot be objectively reasonable.[112] The government actor's violation can be objectively unreasonable even if the case in question presents novel or unusual factual circumstances.[113] In the present case, the facts are anything but unusual. The exact same facts have been confronted by no fewer than five other courts, all of them holding that organizations identical to the Lubbock GSA have the right to meet on campus and that the members of those organizations enjoy the freedom to express their views regardless of whether or not school administrators agree with them.[114] In light of this unanimity among the courts, Clemmons clearly had "fair warning" that his actions were

---

[112]  *Williams v. Kaufman County,* 2003 WL 21962582 (5th Cir. 2003).

[113]  *Id.* at 3.

[114]  *See, e.g., Boyd County High Sch. Gay Straight Alliance,* 258 F.Supp.2d 667; *Franklin Cent. Gay/Straight Alliance,* 2002 WL 32097530; *Gay-Straight Alliance Network,* 262 F.Supp.2d 108; *Seidel,* 95 F.Supp.2d 1239; *East High Gay/Straight Alliance,* 81 F.Supp.2d 1166; *Colin,* 83 F.Supp.2d 1135.

---

improper. Accordingly, Clemmons's refusal to allow the Lubbock GSA to meet on campus on the same terms and conditions as other student groups was objectively unreasonable, and Clemmons is not entitled to qualified immunity.

## V.   Conclusion And Prayer For Relief

Plaintiffs respectfully request that the Court deny Clemmons's motion for summary judgment in its entirety and grant Plaintiffs any other relief that the Court deems appropriate.

Respectfully Submitted,

LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
(214) 219-8585 telephone
(214) 219-4455 facsimile

By:_____
    F. BRIAN CHASE
    Louisiana Bar Number 23450
    Florida Bar Number 996653

BARON & BUDD
A PROFESSIONAL CORPORATION
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 telephone
(214) 520-1181 facsimile

KEVIN D. MCHARGUE
Texas State Bar No. 00792309
MONTY WADE SULLIVAN
Texas State Bar No. 24008105
CARLA M. BURKE
Texas State Bar No. 24012490
SCOTT L. FROST
Texas State Bar No. 24015156
CHRIS J. PANATIER

Attorneys for Plaintiffs