IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT - 1 2003

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

| | |
|---|---|
| YVONNE CAUDILLO by next friend Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association, § § § § § § § § v. § § LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District, § § § § § § § § § § § § § | Civil Action No. 5-03CV0165-C |

---

### REPLY TO PLAINTIFFS' RESPONSE TO
### DR. JACK CLEMMONS' MOTION FOR SUMMARY JUDGMENT
### BASED ON QUALIFIED IMMUNITY AND BRIEF

---

COMES NOW Defendant, DR. JACK CLEMMONS ("Clemmons"), and files this his Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment for Qualified Immunity and would show the Court the following:

**I.**

**Clemmons is entitled to qualified immunity for there was no
violation of a clearly established constitutional or statutory right.**

In order to establish qualified immunity, a two prong test is applied. First, the Court must determine whether the Plaintiff has alleged a deprivation of an actual constitutional or statutory right. The first prong requires that the right must be "*clearly established...under...clearly applicable...standards[.]*" *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325-26 (1998) (emphasis

1

added). The pertinent inquiry asks whether the state of the law in 2002 or January 2003 gave Dr. Clemmons fair warning that this alleged treatment of the Plaintiffs was unconstitutional. *See Barrow v. Greenville Independent School District*, 332 F.3d 844, 848 (5th Cir. 2003).

Clearly, Dr. Clemmons' actions were not violative of a clearly established constitutional or statutory right in 2002 or January 2003, with regard to either the allegations of a depravation of the constitutional right of freedom of speech nor of a violation of a statutory right under the Equal Access Act.

In 2002 and presently, it is clear that the United States Supreme Court has held that school officials can regulate the content of student speech when the speech is of a sexual content. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685-686 (1986) (allowing regulation of vulgar speech); *Broussard v. School Bd.*, 801 F.Supp. 1526, 1528 (E.D. Va 1992) (excluding speech interpreted as offensive or sexual); *Hazelwood v. Kuhlmeier*, 484 U.S. 260, 273-276 (1998) (regulating student speech related to legitimate pedagogical concerns).

Additionally, Federal law requires school officials to prohibit access to websites which contain any words which have any form of sexual content. Children's Online Privacy Protection Act of 1998, 13 U.S.C.A. 1301, *et seq*. Failure of the school official to prohibit this activity by placing filters on school computers for internet access can result in the loss of federal funding. *Id.*

Further, these laws and cases are applicable to the Equal Access Act because of the well being exception. Like the cases cited by Plaintiffs regarding disruption at school-sponsored activities applying to the Equal Access Act under the exception for maintaining order and discipline, clearly inappropriate sexual content speech applies to the Act under the well being exception. Dr. Clemmons was aware of this law and was aware of the obligation to prohibit sexual language and sexual content from school students throughout LISD. [App. 5 at 592: Clemmons Dep. p. 36:2-17] This is consistent with his applying the well being exception to this case.

Additional summary judgment evidence is included in Defendants' Appendices attached hereto and incorporated herein by reference as if copied in full. The evidence showed that Rene Caudillo, the president of GAP Youth/Gay Straight Alliance, [App. 4 at 534: Caudillo Dep. p. 21:1-14], requested that his group place fliers on the Lubbock High School ("LHS") campus in September 2002. [App. 4 at 551: Caudillo Dep. p. 89:16-24]. On the flier, a website was posted. [App. 1 at 641]. Caudillo created the website, http://hometown.aol.com/gapcrew/GAPyouth.html. [App. 1 at 001-009, App. 7 at 641]. (The website was available as reflected in App. 1 and 2 on the date of Caudillo's deposition, September 15, 2003. [App. 4 at 539: Caudillo Dep. p. 41:23-25]). Caudillo testified that he intended the website for everyone. [App 4 at 538, 562: Caudillo Dep. p. 37:16 - p. 38:22; p. 134:5-10]. One purpose for creating the website was to provide information helpful to students and it was intended to be fun. [App. 4 at 562: Caudillo Dep. p. 134:13-18]. Caudillo was responsible for the information contained on the website. [App. 4 at 562: Caudillo Dep. p. 134:8-11] The GAP Youth website included links available on the website. [App. 4 at 535: Caudillo Dep. p. 28:9-12]. Initially, the links were to www.gay.com. [App 4 at 551 and 552: Caudillo Dep. p. 85:10-15; p. 92:17; p. 93:6; App. 3 at 512-526]. The exhibit attached as App. 3 at 512-526 was the same information available through the GAP Youth webpage when Caudillo first created it. [App. 4 at 553: Caudillo. p. 97:3-7]. Later, additional links were added to www.youthresource.com. [App. 4 at 536: Caudillo Dep. p. 32:18-25; App. 2 at 10-511]. The main category of links included Gays, Lesbians, Bisexuals and Transyouth. [App. 4 at 538: Caudillo Dep. p. 37:14-20]. The foregoing was available on the GAP Youth website as of January 1, 2003. [App. 1 at 8].

Information available through the GAP Youth website include examples of multiple references to sex which specifically talked about sexual activity. [App. 4 at 542: Caudillo Dep. p. 53:21-25]. The information and language discussed in the website regarding sexual activity as indicated by Caudillo's testimony, by way of example, included:

3

> A: "Safer sex: How?: Condom use."
> Q: Is this page an instructional page on how an individual would use a condom in the act of sex?
> A: Yes...
> A: "Discuss safer sex with your partner."...
> A: "Number 2, Buy latex condoms, not lambskin."...
> A: "Number 3, open condom package. Don't use teeth. Number 4, when penis is erect... Number 5, squeeze tip of condom and place rolled condom on head of penis. Number 6, leave a half inch space at the tip of the condom to collect semen. Number 7, hold tip of condom and unroll until penis is completely covered. Number 8, after ejaculation, while penis is still erect... Number 9, hold condom at base of penis. Number 10, carefully remove condom without spilling any semen. Number 11, wrap condom in tissue and throw away. Don['t flush condom down the toilet. Number 12, use new condom for every act of vaginal, oral, and anal intercourse."
> Q: In your opinion does this discuss sexual activity?
> A: Yes.
> Q: It's pretty clear it does, doesn't it?
> A: Yes.
> Q: In fact, I mean it's very graphic and descriptive about the sexual act itself, is it not?
> A: Putting on the condom, yes.

[App. 4 at 541: Caudillo Dep. p. 50:7 - p. 51:11; App. 2 at 49].

Another example of sexual activity endorsed by Gay/Straight Alliance on the links made available on their website is as follows:

> A: "Unprotected oral sex can put you at high risk for STD infection and may carry a risk of HIV infection. If you're having oral sex, oral contact with a partner's vagina or anus, use a dental dam or another latex barrier, such as an unlubricated condom cut down the middle. A dental dam is a square piece of latex about five inches on each side available at dental and medical supply stores. And since it can be hard to find dental and medical supply stores, you can also use plastic wrap, available at your local grocery store. If you're having oral sex with a guy, be sure to use an unlubricated condom."...
> A: **"Asking my partner to put on a glove is very erotic. I'm expressing my desire for her to touch me. Safe sex is a turn on. ... If you're sharing a sex toy with your partner such as a dildo make sure to put a condom on the toy, and change condoms in between partners. Or if you have a toy made of silicone, you can boil it for three minutes to sterilize it in between partners."**

[App. 4 at 541: Caudillo Dep. p. 51:25 - p. 52:24; App. 2 at 50-51].

4

Further, the group also endorsed heterosexual sex:

A: "Safer sex: How?"...
A: "Vagina/penis intercourse, inserting a penis" – ...
A: – "into a vagina. Anal intercourse is inserting a penis into an anus. Oral sex, touching someone's vagina or penis with the mouth. Oral/anal sex, touching someone's anus with the mouth. Manual sex, using your hands. Sharing a sex toy." ...
Q: And once again, that information would be information that'd be accessible through the links that are available on your Web site; is that correct?
A: Yes.
Q: And once again, this is very explicit and detailed on in this case the hows of sexual activity; is that correct?
A: Yes.

[App. 4 at 542: Caudillo Dep. p. 54:5 - p. 55:2; App. 2 at 50-51].

Drug use is also advocated on the website, as indicated by Caudillo deposition testimony:

A: But if you decide to shoot up, make sure you don't share needles and use a sterile needle every time.

[App. 4 at 542: Caudillo Dep. p. 53:14-15]

Further, this explicit information is available to all children, no matter the age. However, even more explicit information was available to all of those over the age of 13, by way of belonging to "RingSurg Net Ring" or "Ringmaster." [App. 4 at 542: Caudillo Dep. p. 55:11-18; App. 2 at 195].

Also, Caudillo testified that the GAP Youth website provided access to **www.gay.com**. [App. 4 at 552: Caudillo Dep. p. 95:19] which included very suggestive topics, for example, "New Sexy Gay Game Pics" [App. 4 at 552: Caudillo Dep. p. 95:9, App. 3 at 516]. Another topic, "Favorite Questions," included articles on: 1) "Why am I having erection problems?; 2) How Safe is Oral Sex? ; 3) The Truth About Barebacking; 4) First Time With Anal Sex; 5) Kissing and Mutual Masturbation; 6) How Safe Are Rimming and Fingering?; 7) The Lowdown on Anal Warts." [App. 4 at 552: Caudillo Dep. p. 96:14-17; App. 3 at 574]. This type of information was available through

Caudillo's web page for GAP Youth when it was first created and listed on GAP Youth fliers. [App. 4 at 552: Caudillo Dep. p. 96:24- p. 97:7; App. 3 at 520-526].

In applying to post the GAP Youth fliers, Caudillo and others met with Fred Hardin, Assistant Superintendent for Secondary Education. In Caudillo's meeting with Hardin, Caudillo testified that Hardin said he had looked over the website. [App. 4 at 551: Caudillo Dep. p. 92:7-12]. Caudillo referred to the contents of the website linking to www.gay.com. [App. 4 at 551: Caudillo Dep. p. 92:21-24].

According to Caudillo, the Gay.Com link was removed from its website at some time after requesting permission to place GAP Youth fliers. [App. 4 at 554: Caudillo Dep. p.102:13-14]. However, the youthresource.com link was on the GAP Youth website when Hardin reviewed the website in January 2003 before making his decision denying GAP Youth recognition and informing the group of same. [App. 6 at 613, 626: Hardin Dep. p. 23:15 and p. 74:2; App. 1 at 8].

Plaintiffs' purposes of the LHS Gay/Straight Alliance clearly were based on sex and sexual activity, none of which could be separated from the group itself for there were discussions of heterosexuality and homosexuality, which by definition all are based on sexual activity. Further, the group intended to discuss safe sex, a sexual activity in and of itself as evidenced on the GAP Youth website and stated purposes. [App. 1 at 1-9 and App. 2 at 10 - 511; App. 8 at 643.].

Hardin informed Dr. Clemmons that he had reviewed the flier and information on the website which was indicated on the flier. Hardin informed Clemmons of the sexual content of the website. [App. 5 at 590: Clemmons Dep. 18:1- 20:11]. Dr. Clemmons was aware that the essential promoted activity underlying the group's formation would be in violation of state law based upon the stated goals of the organization, which included "educate those willing about non-heterosexuals" and "educate willing youth about safe sex," [App. 5 at 590-591: Clemmons Dep. p. 17:18 - p. 18:25, p.

6

20:25-p.21:13]. Further, Dr. Clemmons testified, "I am stating that our concern was that by having students meet with this group and having access to the website links that we were aware of is that they reviewed safe sex information and encouraged them to participate in activities that was against state law and LISD policy." [App. 5 at 590: Clemmons Dep. p. 19:6-10].

Clearly, there was no violation of a constitutional right of freedom of speech by Dr. Clemmons as there is no constitutional right for children to encourage, promote or be involved in sexual activity in violation of state law pursuant to Penal Code § 21.11, where it is illegal to have sex with a child 17 years of age or younger and, at that time, in violation of Penal Code § 21.06. Therefore, Clemmons did not violate Plaintiffs' right to free speech for a school administrator can regulate a student's speech when it contains sexual content.

Likewise, Dr. Clemmons did not violate the Equal Access Act (the "Act"). The Act provides school officials the authority to review the application of the group to see if it falls into one of the Acts' exceptions, which are: 1) maintain order and discipline; 2) the well being of the student and faculty; and 3) attendance. [Equal Access Act, 20 U.S.C. § 4071]. Clearly, the exception for the well being of the student applies in this case. In no way did Congress intend to prohibit school officials from controlling access of clubs to its school when it is against federal law, state law and school policy, when the activities involve promoting sexual activity for children from age 12 to 17. Such activity is clearly not in the best interest of the children and is contrary to the well being of children.

Therefore, Dr. Clemmons did not deprive Plaintiffs of a clearly established statutory right for he legitimately, with authority, implemented the exception to the Equal Access Act, that of the well being of the student. Not only was it his right to do so, but it was his duty and obligation to do so.

## II.

**In the alternative, if the Court finds that there was a violation of either a clearly established constitutional or statutory right, Dr. Clemmons' actions were objectively reasonable.**

The Fifth Circuit has established the standard by which reasonableness must be determined for qualified immunity. The second prong "is better understood as two separate inquiries: 'whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was *objectively reasonable* in the light of the then clearly established law,'" *Hare* at 326, and also considered are "the particulars of the challenged conduct and/or of the factual setting in which it took place." *Pierce v. Smith*, 117 F.3d, 866, 872 (5th Cir. 1997).

Of great import, the Fifth Circuit determines objective reasonableness, as follows:

> **defendant's acts are ... objectively unreasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the Federal statute as alleged by the plaintiff.**

*Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original).

At the time of Defendant Clemmons' actions, there was no Fifth Circuit case nor any U.S. Supreme Court case on the point. Additionally, there were no District Court cases in the Fifth Circuit that had even been decided nor are there presently. To the contrary, there were U.S. Supreme Court cases allowing school officials to regulate the content of student speech when it dealt with sexual matters. *See Hazelwood* at 260 and *Bethel Sch. Dist.* at 675.

Plaintiffs clearly have the burden to demonstrate that Dr. Clemmons should not be shielded with qualified immunity by establishing that he violated clearly established federal rights. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001); *Pierce* at 871-72. Plaintiffs cannot meet this burden. Dr. Clemmons acted reasonably in the light of the then clearly established law and Plaintiffs cannot prove otherwise.

## III.

### No Material Facts Exist

The standard to prevail on a motion for summary judgment requires that a court grant summary judgment as a matter of law, if the moving party is entitled to judgment and if no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); (quoting FED.R.CIV.P. 56(c)). All attempts by Plaintiffs to create a factual dispute are based on facts which are not material to the ultimate issues before this Court, and Movant is entitled to judgment as a matter of law.

## IV.

### CONCLUSION

Dr. Clemmons' Motion for Summary Judgment on the basis of qualified immunity should in all things be granted. Dr. Clemmons did not violate a clearly established constitutional or statutory right as he based his decision, *inter alias,* on the inappropriateness of sexual content for children, and state and federal law. This regulation is allowed and is not in violation of the Plaintiffs' right to free speech. Likewise, involving the exception to the Equal Access Act, that being the consideration for the well being of the student, is not a clearly established violation of a statutory right.

Further, Dr. Clemmons' actions were objectively reasonable. It was not sufficiently clear that Dr. Clemmons, as a reasonable official, would understand that his actions violated any rights of Plaintiffs, and Plaintiffs cannot prove that "**all**" reasonable officials in Defendant Clemmons' circumstances would have known that the conduct was in violation of a clearly established constitutional or statutory right. To the contrary, there was legal precedent that gave Clemmons the authority to regulate student speech when sexual conduct was at issue.

WHEREFORE, Defendant prays that this Court grant his Motion for Summary Judgment based on qualified immunity.

                                                   Respectfully submitted,

McWHORTER, COBB AND JOHNSON, L.L.P.
1722 Broadway
P. O. Box 2547
Lubbock, Texas 79408-2547
(806) 762-0214 (Telephone)
(806) 762-8014 (Facsimile)
Ann Manning
State Bar No. 12950100
R. Michael McCauley, Jr.
State Bar No. 00797030

By: _____
      Ann Manning
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that on this the 1st day of October, 2003, a true and correct copy of the above and foregoing document has been sent by certified mail, return receipt requested to:

| | |
|---|---|
| F. Brian Chase | Monty Wade Sullivan |
| LAMBDA Legal Defense | BARON & BUDD, P.C. |
| and Education Fund, Inc. | 3102 Oak Lawn Avenue, Suite 1100 |
| 3500 Oak Lawn Avenue, Suite 500 | Dallas, TX 75219 |
| Dallas, TX 75219-6722 | *CM/RRR #7001 0320 0004 3918 ~~4997~~ 4493* |
| *CM/RRR #7001 0320 0004 3918 ~~4980~~ 4509* | |

_____
ANN MANNING