IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

(RW)
8:40 am

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 2 0 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| YVONNE CAUDILLO by next friend, Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend, Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association; )))))))) | |
| **Plaintiffs** ) | |
| v. ) | Civil Action No.  5-03 CV 0165-C |
| ) | |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District; ))))))))))))) | |
| **Defendants.** )) | |

---

**Plaintiffs' Brief in Support of Motion for Summary Judgment**

---

LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
(214) 219-8585 telephone
(214) 219-4455 facsimile
By: F. BRIAN CHASE
Louisiana Bar Number 23450
Florida Bar Number 996653

**Attorney for Plaintiffs**

## Table of Contents

Table Of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Nature Of The Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Argument And Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II.     Defendants Violated The Equal Access Act. . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The LISD Accepts Federal Funds. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      LHS Has Established A Limited Public Forum. . . . . . . . . . . . . . . . . .7

        C.      The Lubbock GSA Is A Non-Curriculum Related Student Group. . . . . . . 8

        D.      Defendants Have Discriminated Against The Lubbock GSA. . . . . . . . . . 9

III.    Defendants Violated The First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      Students Have The Right To Discuss Issues Of Public Concern On
                School Premises. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

        B.      Defendants Engaged In Unlawful Discrimination. . . . . . . . . . . . . . . . .12

IV.     Defendants' Affirmative Defenses Are Without Merit. . . . . . . . . . . . . . . . . . . 17

        A.      The Equal Access Act Does Not Allow A Broad Exception For The
                Perceived "Well-Being" Of Students. . . . . . . . . . . . . . . . . . . . . . . . . .17

        B.      The Refusal To Allow Plaintiffs To Meet And Speak Cannot Be
                Justified Based On State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        C.      Defendants Cannot Invoke A "Heckler's Veto." . . . . . . . . . . . . . . . . . 23

        D.      Defendants' "Abstinence Only" Policy Is Irrelevant. . . . . . . . . . . . . . .24

        E.      Clemmons Cannot Claim Qualified Immunity. . . . . . . . . . . . . . . . . . . 26

        F.      LISD And Its Officials Cannot Claim Eleventh Amendment
                Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Conclusion And Prayer For Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

Certificate Of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Table of Authorities**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Boyd County Gay Straight Alliance v. Bd. of Educ.*,
     258 F.Supp.2d 667 (E.D. Ky. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 18, 24

*Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Chiu v. Plano Ind. Sch. Dist.*, 260 F.2d 330 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . .12-13

*Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . .7

*East High Gay/Straight Alliance v. Bd. of Educ.*,
     81 F.Supp.2d 1166 (D. Utah 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

*East High Sch. Prism Club v. Seidel*, 95 F.Supp.2d 1239 (D. Utah 2000) . . . . . . . . . . . . . . . . .10

*Franklin Cent. Gay/Straight Alliance v. Franklin Tp. Cmty Sch. Corp.*,
     2002 WL 32097530 (S.D. Ind. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*,
     262 F.Supp.2d 1088 (E.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Gay Student Services v. Texas A & M Univ.*, 737 F.2d 1317
     (5th Cir. 1984), *cert. denied*, 471 U.S. 1001 (1985) . . . . . . . . . . . . . . . . . . . . . .16, 22, 26

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*,
     508 U.S. 384 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lawrence v. Texas*, 123 S.Ct. 2472 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Limon v. Kansas*, 123 S.Ct. 2638 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977) . . . . . . . . . . . . . . . . . .27

*Pope v. East Brunswick Bd. Of Educ.*, 12 F.3d 1244 (3rd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . .9

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) . . . . . . . . . . . . . . . . . . 13

*San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279 (Tex. 1996) . . . . . . . . . . . . . . . . 27

*Shanley v. Northeast Indep. Sch. Dist.,* 462 F.2d 960 (5th Cir. 1972) . . . . . . . . . . . . . . 11, 23, 26

*Tinker v. Des Moines Indep. Cmty Sch. Dist.,* 393 U.S. 503 (1969) . . . . . . . . . . . . . . . . . .10, 24

*Tirminiello v. City of Chicago,* 337 U.S. 1 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Westside Cmty Bd. Of Educ. v. Mergens,* 496 U.S. 226 (1990) . . . . . . . . . . . . . . . . . . . . .7-9, 25

*Widmar v. Vincent,* 454 U.S. 263 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

**Statutes:**

20 U.S.C.A. § 4071, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 18, 25

Fed R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Tex. Alco. Bev. Code Ann. §106.01 (Vernon 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tex. Alco. Bev. Code Ann. §106.02 (Vernon 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tex. Pen. Code Ann. §21.11 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tex. Pen. Code Ann. §22.015 (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Tex. Pen. Code Ann. §46.13 (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Tex. Pen. Code Ann. §71.002 (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Tex. Trans. Code Ann. §729.001 (Vernon 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

**Miscellaneous:**

130 Cong. Rec. 20944, 19211-52 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| YVONNE CAUDILLO by next friend, Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend, Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association; | ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | |
| | ) | Civil Action No.  5-03 CV 0165 - C |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

---

**Plaintiffs' Brief in Support of Motion for Summary Judgment**

---

**Nature Of The Action**

On July 8, 2003, Plaintiffs filed suit against Defendants seeking both declaratory and injunctive relief requiring that Defendants allow the Lubbock High School Gay-Straight Alliance ("Lubbock GSA") to meet at Lubbock High School ("LHS") on the same terms and conditions as Defendants apply to numerous other student groups.  Plaintiffs brought their claims pursuant to the federal Equal Access Act, 20 U.S.C. § 4071 and the First Amendment to the United States Constitution.

**Factual Background**

In the fall of 2002 by a group of students at LHS decided to from an organization to promote understanding and mutual respect among gay and straight students.[1]  These students include Ricky Waite, Mirah Curzer, Rene Caudillo and his sister, Yvonne Caudillo.

Rene Caudillo, who graduated from LHS last May, moved to Lubbock in ninth grade to live with his dad.[2]  During that year some of Rene's peers found out that he is gay.[3]  Soon after word got out that Rene was gay, he began to experience serious harassment at school.  He was regularly referred to as "faggot," "punk" and "queer" by his peers.[4]

During his sophomore year Rene moved back to New Mexico to live with his mother.[5]  Upon returning to New Mexico, Rene continued to experience problems.   The harassment began when Rene was walking in the parking lot and a group of boys surrounded him and pinned him against some cars.[6]  Soon after the incident in the parking lot another group of boys in a car chased Rene while swinging baseball bats out the car windows and screaming anti-gay slurs.[7]

---

[1] *See* App. at 4.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *See* App. at 5.

[7] *Id.*

Rene next had a group of boys sneak up behind him and slam his hand into his locker door.[8]
Rene was called "faggot" during nearly every break between classes.  Rene developed a terrible
fear of school, and he "always had this weird feeling that somebody was following me and going
to jump me."[9]

Soon after his return, Rene started to experience something he had not expected.  During
his first few months at LHS, literally dozens of students called Rene to talk to him about being
gay.[10]  Because Rene was openly gay, they felt comfortable confiding in him.  These phone calls
led Rene to the conclusion that there was tremendous interest in a safe place where gay and
lesbian young people could find support and fellowship and promote understanding and respect
for everyone regardless of sexual orientation.[11]

Ricky Waite was the co-founder of the Lubbock GSA and had experiences similar to
Rene's that led him to the conclusion that there was a need for a group where gay and straight
students could discuss important issues.  One night while Ricky was working at his part-time job
at a gas station, two young men and a girl stepped out of two trucks and came up to the attendant
station.  When the girl walked back to one of the trucks one of the guys yelled "**** off you
faggot" to Ricky, then they surrounded the attendant's station with their vehicles and started

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

banging on the windows.[12]  The assailants finally left when Ricky called security.  For months

after the incident, Ricky was afraid to go to work or be by himself.[13]

Mirah Curzer met Ricky in French class at LHS.  Mirah is not gay, but she's seen enough

anti-gay bullying and harassment at LHS to upset her.  Once while she was walking down the hall

at LHS with a lesbian friend, another student called them both "dykes."  On another occasion,

Mirah was sitting next to Ricky in French class during a "free day" when students were allowed

to study or converse when another girl in the class spent the entire hour telling Ricky he was

going to Hell, that he wasn't fit to raise kids, and that he was an "abomination."[14]  At that point

Mirah decided that she didn't want to remain silent while her friends were being mistreated.

When Ricky told Mirah that he and Rene were starting a group to raise visibility and support gay

students in Lubbock, she was one of the first to join and show her support.[15]

The group Ricky and Rene started has become the Lubbock GSA.  They started with off-

campus meetings, but eventually decided that they would like to announce their meetings on

campus and meet on campus as a non-curricular student club.  The students assumed that they

would be allowed to do so, since during the 2002-2003 school year, Defendants allowed many

other students to participate in a wide range of non-curricular student groups, including political,

religious, ethnic, social, community service, career-related, and recreational clubs.  These groups

include, but are not limited to, the Business Professionals of America, Future Business Leaders

---

[12] *See* App. at 8.

[13] *Id.*

[14] *See* App. at 9.

[15] *Id.*

of America, Amnesty International, Interact, Key Club, What's Up African-American Minds, Young Entrepreneurs, 4-H, Psychology Club, the League of United Latin American Citizens, Junior Cosmetology, Young Democrats, Young Republicans, Young Libertarians, and the Fellowship of Christian Athletes.  Defendants admit that these groups are allowed to, and do, meet on the campus of LHS.[16]

During the 2002-2003 school year, six members of Lubbock GSA, including plaintiff Mirah Curzer, filed a written request with the principal of LHS asking that Lubbock GSA be allowed to meet on the campus of LHS on the same terms afforded other student groups.  The District's regulations state that such requests "may be approved by the principal and the Superintendent ... without regard to the religious, political, philosophical or other content of the speech likely to be associated with the group's meetings."[17]   Despite the clear language of the District's own regulations, Defendants denied permission to Lubbock GSA to meet or announce meetings on LHS property.[18]

**Argument And Authorities**

**I.      Standard Of Review.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[16] *See* Original Answer of Lubbock Independent School District, Paragraph 16.  Defendants have given several conflicting lists of the groups which presently meet at LHS, but they have never disputed the fact that such groups do meet on campus. *See* Responses to Discovery by L.I.S.D.

[17] *See* App. at 1-3.

[18] *See* Original Answer of Lubbock Independent School District, Paragraph 48 and 49.

of law.[19] An issue is "genuine" only if the evidence is such that a jury reasonably could return a verdict for the opposing party.[20] Disputes regarding factual issues will prevent summary judgment only if the facts in dispute are material, meaning that "it might affect the outcome of the suit in light of substantive law."[21] The Defendants bear the burden of producing sufficient evidence to support every essential element of the affirmative defenses upon which they rely.[22]

As demonstrated below, there are no disputes as to any facts material to this case. The Defendants admit each and every element of Plaintiffs' claims. Defendants' claim that they were entitled to violate Plaintiffs' constitutional and statutory rights by crafting affirmative defenses that have never been recognized by any court and that have no basis in case law or the applicable statutes. Accordingly, summary judgment in favor of the Plaintiffs' is entirely appropriate.

## II.     Defendants Violated The Equal Access Act.

The language of the Equal Access Act could not be clearer. The Act states, in no uncertain terms, that it is unlawful for any public secondary school which receives federal assistance and which has a limited open forum "to deny equal access or a fair opportunity to, or discriminate against any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings."[23] Congress intended to provide a "low threshold" for triggering the protections of the

---

[19] Fed.R.Civ.P. 56(c)

[20] *Anderson v. Liberty Lobby, Inc.* ,477 U.S. 242, 248 (1986).

[21] *Id.*

[22] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

[23] 20 U.S.C.A. § 4071 (1990)

Equal Access Act.[24]  The protection granted by the Equal Access Act is intentionally broad and

explicitly applies to all forms of speech.[25]  Congress did not enact an "Equal Access for

Everyone Except Gay Students Act."  The plain language of the act does not contain any

exceptions for speech which school officials might consider controversial, or that might

contradict a school curricular policy.

### A.      The LISD Accepts Federal Funds.

The District has admitted that it accepts federal financial assistance.[26]  Accordingly, the

first element of Plaintiffs' claim is not in dispute.

### B.      LHS Has Established A Limited Open Forum.

In the present case, the District admits that it has created a limited open forum at LHS.[27]

Accordingly, the second element of Defendants' cause of action is not in dispute.

A school has a "limited open forum" whenever it "grants an offering to or opportunity for

one or more non-curriculum related student groups to meet on school premises during

noninstructional time."[28]  Were LHS to allow even one non-curriculum related student group to

meet on its campus, the school would become subject to The Equal Access Act's obligations,

preventing the school from denying other clubs, based on the content of their speech, equal

---

[24] *Westside Cmty Bd. Of Educ. v. Mergens*, 496 U.S. 226, 240 (1990).

[25] *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1142 (C.D. Cal. 2000).

[26] *See* Original Answer of Defendant, Lubbock Independent School District, Paragraph 25.

[27] *See* Original Answer of Defendant, Lubbock Independent School District, Paragraph 24.

[28] 20 U.S.C.A. § 4071(b).

access to meet on its premises during non-instructional time.[29]   In the present instance, many

non-curricular groups enjoy access to the LHS campus.  Plaintiffs seek to be treated exactly the

same as these other groups.

### C.      The Lubbock GSA Is A Non-Curriculum Related Student Group.

Section (b) of the Equal Access Act requires that the Lubbock GSA qualify as a "non-

curriculum related student group" in order to fall under The Equal Access Act. It is clear from the

Equal Access Act itself and from controlling precedent that the Lubbock GSA is a non-

curriculum related student group as that term is used in the Equal Access Act.  In order to

effectuate the broad congressional purposes of the Equal Access Act, the Supreme Court in

*Mergens* adopted an expansive definition of the term "non-curriculum related student group."

Under *Mergens*, a student group does not become "curricular" simply because some of the

content of the speech at its meetings may relate to matters addressed in the high school

curriculum.  Rather, student groups are deemed curricular only in the following narrow

circumstances:

> [I]f the subject matter of the group is actually taught, or will soon be taught, in a
> regularly offered course; if the subject matter of the group concerns the body of
> courses as a whole; if participation in the group is required for a particular course;
> or if participation in the group results in academic credit.[11]

In this case, the subject matter of the Lubbock GSA is the promotion of tolerance and respect

among and for gay and straight students at the school.[30]  The Lubbock GSA is intended to

---

[29] *Mergens*, 496 U.S. at 236; *Colin*, 83 F. Supp. 2d at 1143

[11] *Mergens*, 496 U.S. at 239-40.

[30] *See* App. at 4.

Plaintiffs' Brief in Support of Motion for Summary Judgment

provide a forum in which to talk about what it is like to be a gay or straight student and about unfair treatment, stereotyping and prejudice based on sexual orientation.[31]

There is no course in the curriculum at LHS that directly encompasses the subject matter of the Lubbock GSA. The District does not allege that its curriculum contains any instruction relating to mutual understanding between gay and straight people or the place of gay and lesbian citizens in American society. Clearly the District does not allow any instruction that might overlap in any way with the matters discussed by the Lubbock GSA. Accordingly, the Lubbock GSA is not related to the curriculum.

"The burden of showing that a group is directly related to the curriculum rests on the school district."[32] Defendants have not even attempted to satisfy that burden here. In fact, Defendants have repeatedly asserted that the positions of the Lubbock GSA contradict the curriculum approved by LISD. Accordingly, the Lubbock GSA is a non-curriculum related student group entitled to full protection under the Equal Access Act.

### D.    Defendants Have Discriminated Against The Lubbock GSA.

Because LHS has a limited open forum, Defendants must give the Lubbock GSA all the same rights and privileges as they give to other student groups. Foremost among these rights is the right of the Lubbock GSA to meet on the premises of LHS during non-instructional time. To date, Defendants have prevented the Lubbock GSA from exercising this right.[33]

---

[31] *Id.*

[32]*Pope v. East Brunswick Bd. of Educ.*, 12 F.3d 1244, 1252 (3rd Cir. 1993), (citing *Mergens*, 496 U.S. at 240).

[33]*See* Original Answer of Lubbock Independent School District, Paragraphs 48 and 49.

Plaintiffs' Brief in Support of Motion for Summary Judgment

The purpose of the Equal Access Act is not to protect only those student groups that engage in non-controversial speech. Rather, its purpose is quite the opposite. As Representative Eckart explained in supporting the final version of the Equal Access Act that arrived in the House from the Senate: "As much as the three "R's" are part of growing up in our society, so is the appreciation of divergent viewpoints in our society . . . ."[34] In sum, the Equal Access Act prohibits Defendants from denying the Lubbock GSA the right to meet at LHS. Courts have consistently recognized the basic purpose of the Equal Access Act when faced with school opposition to gay-straight alliances like the one here and have found, as a matter of law, that the mere assertion that a club might be disruptive or interfere with students' well-being is not sufficient to deny the students' right to meet.[35] Under the clear terms of the Equal Access Act the Plaintiffs are entitled to summary judgment.

### III. Defendants Violated The First Amendment.

#### A. Students Have The Right To Discuss Issues Of Public Concern On School Premises.

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[36]  When the school makes its facilities generally available for the activities of student groups, the school has designated those facilities as a "limited public forum" and may not

---

[34] *See* 130 Cong. Rec. 20944 (1984); *see also id.* at 19226 (statement of Sen. Metzenbaum) (concluding that, under the Equal Access Act, "a school board would have absolutely no authority" to deny a gay rights group the right to hold a peaceful meeting).

[35] *See, e.g., Boyd County*, 258 F.Supp.2d 667 (E.D. Ky. 2003); *Franklin Cent. Gay/Straight Alliance v. Franklin Tp. Cmty Sch. Corp.*, 2002 WL 32097530 (S.D. Ind. 2002); *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F.Supp.2d 1088 (E.D. Cal. 2001); *East High Sch. Prism Club v. Seidel*, 95 F.Supp.2d 1239 (D. Utah 2000); *East High Gay/Straight Alliance v. Bd. of Educ.*, 81 F.Supp.2d 1166 (D. Utah 1999); *Colin*, 83 F.Supp.2d 1135.

[36] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

discriminate against those student groups based on their content or subject matter.[37]  Indeed, the

Constitution commands that whatever forum a school may create for its students' free expression

of ideas, the school may not pick and choose among the ideas or viewpoints that find expression

within the school's forum.[38]  The Constitution's guarantee "is not confined to the expression of

ideas that are conventional or shared by a majority."[39]

In the Fifth Circuit high school students' freedom of speech extends to controversial topics

such as birth control and illegal drug use.  In *Shanley v. Northeast Independent School District*,[40]

the Fifth Circuit addressed the issue of whether or not a school district could suspend students for

publishing and distributing an independent student-written newspaper called the "Awakening,"

and held as follows:

> The two 'controversial' subjects in the 'Awakening' are a statement advocating a
> review of the laws regarding marijuana and another statement proffering
> information on, among other things, birth control.  We find the allegedly
> outrageous and 'controversial' nature of these two subjects rather peculiar. . . . We
> might add that a casual glance at any public medium would assure even the most
> doubtful observer that the general subjects of marijuana and birth control are
> rather widely-discussed. It appears odd to us that an educational institution would
> boggle at 'controversy' to such an extent that the mere representation that students
> should become informed of two widely-publicized, widely-discussed, and
> significant issues that face the citizenry should prompt the board to stifle the
> content of a student publication.[41]

---

[37] *Widmar v. Vincent*, 454 U.S. 263, 267-70 (1981).

[38] *East Gay/Straight Alliance v. Bd. of Educ.*, 81 F. Supp. 2d 1166, 1170 (D. Utah 1999).

[39] *Id.*

[40] 462 F.2d 960 (5th Cir. 1972).

[41] *Id.* at 972.

Now, a full thirty years after the *Shanley* decision, Defendants argue that subjects such as homosexuality and the avoidance of sexually transmitted diseases are controversial and that this allows the LISD may ban any and all speech related to these topics, but the Fifth Circuit has clearly rejected that argument as a matter of law. The Defendants have advanced no reasons for their blanket ban on Plaintiffs' First Amendment rights, other than their desire to censor any speech related to human sexuality. Accordingly, Defendants' actions run afoul of the First Amendment and summary judgment in favor of the Plaintiffs is appropriate.

**B.      Defendants Engaged In Unlawful Discrimination.**

Defendants tolerate and actively promote a wide array of student speech on the campus of LHS. Although Defendants have been somewhat unclear as to precisely what non-curriculum based student clubs meet at LHS, it is undisputed that several such organizations do so. These groups include religious organizations and organizations promoting acceptance of students of various racial and ethnic groups.[42] Considering the fact that the LISD allows robust discussion of other issues of importance to students, they cannot suddenly reverse course and determine that student speech is impermissible if that speech involves topics of importance to gay and lesbian students and their allies.

It is also settled law that the government, including school districts, "may not regulate speech based on its substantive content or the message it conveys."[43] This is true

---

[42] *See* Original Answer of Lubbock Independent School District, Paragraph 16.

[43] *Chiu v. Plano Ind. Sch. Dist.*, 260 F.2d 330 (5th Cir. 2001) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)).

even where the message may diverge from an opinion, position or policy taken by the school.[44] In the present instance the LISD has imposed a policy silencing any student who advocates equality for gay people or who questions the LISD policy regarding birth control and safer sex. Accordingly, the LISD has engaged in unlawful viewpoint and content-based discrimination.

Defendant Clemmons admits that under the LISD prohibition on speech extends to student discussion of laws that discriminate against gay and lesbian people, and may be precluded from even discussing the existence of gay and lesbian citizens.[45] Defendant Hardin flatly admits "having any organization meet where their tenets are not congruent with the LISD policy doesn't work."[46] The position of Defendants is that any speech contradicting LISD policy must be suppressed. It is hard to imagine a more blatant example of viewpoint discrimination.

In the present instance, the LISD has enacted a complete ban on any speech advocating safer sex as an alternative to abstinence until marriage.[47] Defendants, however, argue that this ban on speech that they dislike is somehow "neutral" due to its breadth.[48]  Indeed, such "neutrality" has been soundly rejected by the United States

---

[44] *Id.*

[45] App. at 13-14.

[46] App. at 18.

[47] *See* App. at 19-23, 27.

[48] App. at 24-28.

Supreme Court as a defense to viewpoint discrimination.[49]  In *Lamb's Chapel*, school

officials refused to let a religious group make a presentation, claiming that it had a

"neutral" policy of excluding all religious speech.[50]  The Court rejected this claim of

neutrality, explaining that the fact that "all religions and all uses for religious purposes are

treated alike . . . does not answer the critical question whether it discriminates on the

basis of viewpoint."[51]

The LISD claims that its decision to censor the Lubbock GSA stems from its

policy of "abstinence-only" education.[52]  Even if this were a constitutionally acceptable

rationale for banning speech, it should be noted that the LISD has not simply barred

speech directly relating to sex.  Indeed, the LISD has enacted a discriminatory policy

banning **any** discussion supporting equal treatment under the law for gay and lesbian

citizens.  Defendants' decision to censor the Lubbock GSA is one example of

Defendants' discrimination, but it is not the only one.

The software installed in all LISD computers blocks the websites of virtually

every national gay rights group.   These groups include the Human Rights Campaign;[53]

---

[49] 508 U.S. 384 (1993).

[50] *Id*. at 393.

[51] *Id*.

[52] App. at 24-29.

[53] App. at 30.  The Human Rights Campaign is "a bipartisan organization that works to advance equality based on sexual orientation and gender expression and identity, to ensure that gay, lesbian, bisexual and transgender Americans can be open, honest and safe at home, at work and in the community." http://www.hrc.org/about/mission.asp.

the Gay, Lesbian and Straight Education Network;[54] Parents and Friends of Lesbians and

Gays;[55] and Soulforce.[56] All of these organizations are blocked with the message "The

Websense category "Gay or Lesbian or Bisexual Interest" is filtered."[57] It is almost

unimaginable how Defendants can argue that they endorse a policy of "neutrality" while

silencing any and all pro-gay voices, including the voices of the Plaintiffs.

The LISD takes a much more permissive approach when it comes to anti-gay

speech. The Christian Broadcasting Network is accessible from LISD computers and

contains countless examples of anti-gay invective, including a reference to the gay man

who was recently confirmed as the Episcopal Bishop of New Hampshire as "The Devil in

Disguise."[58] The LISD also allows students free access to the website of the "Family

Research Counsel" which publishes a book with the ominous title, "Dark Obsession, the

Tragedy and Threat of the Homosexual Lifestyle,"[59] and advocates the position that

---

[54] App. at 31-32. GLSEN is "an education organization creating safe schools for all lesbian, gay, bisexual and transgender people" http://www.glsen.org/templates/about/index.html?section=25.

[55] App. at 33. "PFLAG promotes the health and well-being of gay, lesbian, bisexual and transgendered persons, their families and friends through: support, to cope with an adverse society; education, to enlighten an ill-informed public; and advocacy, to end discrimination and to secure equal civil rights." http://www.pflag.org/about/mission.html.

[56] App. at 34. Soulforce is a group of people of faith "determined to help end the suffering of God's lesbian, gay, bisexual and transgender children" and "determined to help change the minds and hearts of religious leaders whose anti-homosexual campaigns lead (directly and indirectly) to that suffering." http://www.soulforce.org/index.shtml.

[57] *See* App. at 9-10.

[58] App. at 35-37. http://www.cbn.com/spirituallife/perspectives/ griffith%5Fepiscopalcontroversy0308%2Easp.

[59] App. at 40-42. http://www.frc.org/file.cfm?f=KEYWORD&key=HU.

"homosexuality is as sinful as murder."[60]  The LISD computers do not censor websites

promoting faith-based "reparative therapy" which allegedly turns gay people straight.[61]

This type of "therapy" has been unequivocally condemned by the American

Psychological Association as a procedure with great risks, including "depression, anxiety

and self-destructive behavior."[62]  Apparently the LISD feels that it is acceptable to

provide children with information about dangerous and ineffective "medical" procedures,

so long as those procedures are promulgated by the opponents of gay rights.

   At least one group expressing anti-gay views actually meets on the campus of

LHS.  The Fellowship of Christian Athletes ("FCA") is an approved non-curricular group

which is allowed to meet and advertise.[63]  The FCA requires its volunteers to agree that

"[n]either heterosexual sex outside of marriage nor any homosexual act constitute an

alternate lifestyle acceptable to God."[64]  The Fifth Circuit has clearly held that exclusion

is not permissible where that exclusion "functioned to discourage one viewpoint and

advance another."[65]  Accordingly, the LISD cannot bar Plaintiffs from expressing their

views on campus while allowing a broad array of other groups access to school facilities.

---

[60] *Id.*  http://www.frc.org/get.cfm?i=PD00I1.

[61] App. at 44.  www.exodus-international.org and www.pfox.org.

[62] App. at 46-54.  http://www.psych.org/public_info/gaylesbianbisexualissues22701.pdf.

[63] App. at 71.

[64] App. at 99-104.

[65] *Gay Student Serv. v. Texas A&M Univ.*, 737 F.2d 1317, 1332 (5th Cir. 1984).

Even if Defendants could establish that they have not discriminated against Plaintiffs based on their viewpoint, it is abundantly clear that Defendants have also discriminated against Plaintiffs based on the content of their speech.  Defendants admit as much when they state that they blocked the Lubbock GSA from meeting because they feared that the members of the Lubbock GSA might discuss matters that are banned by LISD's "abstinence only" policy.[66]  Such content-based discrimination is impermissible under the First Amendment.[67]  Such discrimination is permissible only if the school can demonstrate that its decision was narrowly drawn to serve a compelling state interest.[68]  Defendants have not even attempted to meet that burden in the present instance.  Accordingly, summary judgment should be granted in favor of the Plaintiffs.

## IV.     Defendants' Affirmative Defenses Are Without Merit.

### A.     The Equal Access Act Does Not Allow A Broad Exception For The Perceived "Well-Being" Of Students.

Defendants repeatedly state that there is a broad exception to the Equal Access Act for the "well being" of students."[69]  Indeed, Defendant Clemmons has testified that it is the "duty" of the LISD to block any speech that, in its sole discretion, is not for the well-being of students.[70]  In its original answer, the LISD asserted that the Equal Access Act contains exceptions "when needed for the well-being of students and disruption.

---

[66] *See* App. at 18.

[67] *Widmar,* 454 U.S. at 269.

[68] *Id.*

[69] *See* App. at 25.

(*sic*)"[71]  By failing to accurately quote the actual language of the Equal Access Act the Defendants completely misconstrue the narrow exception in question.  The act does not contain a broad exemption for the perceived "well-being" of students, but rather allows only a narrow exception if the club would limit the school's ability "to maintain order and discipline *on school premises*, to protect the well-being of students and faculty."[72]  The Act also allows the school to ensure that meetings do not "materially or substantially interfere with the orderly conduct of educational activities within the school."[73]

When read in context, these provisions clearly provide an exception only when a school district can demonstrate that the activities of the group are disruptive or create a dangerous condition at the school itself.[74]  The Defendants have asserted nothing demonstrating that the Lubbock GSA might create a dangerous condition or disrupt the ability of the District to continue educating students.  Indeed, it appears that the District's sole defense is that it disagrees with the Lubbock GSA and wants to silence the students in question.

In fact, the Congressional Record directly refutes Defendants' interpretation of the narrow exceptions to the Equal Access Act.  The exception in question was drafted by Senator Danforth, who explained that the purpose of the exception was to prevent

---

[70] *See* App. at 16.

[71] *See* Original Answer of Lubbock Independent School District, Paragraph 53.

[72] 20 U.S.C.A. § 4071(f) (emphasis added).

[73] 20 U.S.C.A. § 4071(c)(4).

[74] *Boyd County Gay Straight Alliance*,  258 F.Supp.2d at 680.

aggressive religious recruiting on school grounds. In explaining his amendment, the

Senator stated:

> The theory of this amendment is to make it clear that the school
> administration does have, does continue to have inherent power to prevent
> the unrestrained, intensive, extreme psychological pressure which could be
> utilized by some religious groups to attempt to bring other kids within the
> religious community. Under this amendment, as it is presently drafted at
> least, it is the intent of the author of this language that it would continue to
> be possible for the school boards and the school administration to take
> such action as is necessary to prevent kids from being in effect
> brainwashed within the school premises; that is to say, in the event that,
> for example, a cult were to set up a cell, hold meetings, attempt to go out,
> draw other kids into this religious organization, and use what amounts to
> psychological warfare in order to accomplish that objective.[75]

Accordingly, the Defendants' argument that they are allowed to suppress any speech which they

predict might not be for "the well-being of students" is utterly untenable.

If Defendants' interpretation of the Equal Access Act were the correct one, school

administrators would have unfettered discretion to ban groups from campus based solely

on their perception of what is or is not good for the "well-being" of students. Secular

administrators could ban religious organizations by merely claiming that religious belief

is "irrational" or "illogical." Administrators could ban political groups on the mere

assertion that they believed that the political position of the groups would not be

conducive to the "well-being" of the students in question. Defendants' broad

interpretation of the exceptions to the Equal Access Act have not been recognized by any

court for the simple reason that such a sweeping exception would render the Act

---

[75] 130 Cong. Rec. 19211-52 (1984). at 19229

meaningless.  Because Defendants' interpretation of the Act is without support in the case

law or in the language of the Act itself, Plaintiffs are entitled to summary judgment.

**B.     The Refusal To Allow Plaintiffs To Meet And Speak Cannot Be
         Justified Based On State Law.**

Defendants cite a laundry list of Texas criminal statutes in an apparent attempt to

cobble together a "parade of horribles" sufficient to detract attention from their illegal and

discriminatory mistreatment of the Lubbock GSA and its members.  Defendants argue

that, while it is legal for heterosexual teenagers to engage in sexual intimacy in Texas, for

gay and lesbian teenagers the very same acts are considered illegal.  Under the Texas

statutes, it is legal for a seventeen year old boy to be intimate with a sixteen year old girl,

but the exact same intimate acts are deemed a crime if the teenagers are not of the

opposite sex.[76]  Apparently Defendants feel that the existence of a discriminatory law

justifies further discrimination.

Defendants' arguments are incorrect.  First, the discriminatory age of consent law

is unconstitutional.  Little more than three months ago the United States Supreme Court

held that the §21.06 of the Texas Penal Code, which barred same-sex intimate activity,

was unconstitutional.[77]  In her concurrence, Justice O'Conner noted that "the State cannot

single out one identifiable class of citizens for punishment that does not apply to

everyone else, with moral disapproval as the only asserted state interest for the law."

This rationale certainly applies just as strongly to Texas' law purporting to criminalize

---

[76] Texas Pen. Code Ann. § 21.11 (Vernon 2003).

[77] *Lawrence v. Texas*, 123 S.Ct. 2472 (2003).

Plaintiffs' Brief in Support of Motion for Summary Judgment

sexual activity by gay teenagers but not heterosexual teens. Indeed, just one day after the

*Lawrence* decision was issued, the Supreme Court vacated the judgment of the Court of

Appeals of Kansas, which had upheld the conviction of a boy under a similarly

discriminatory age of consent law.[78]  The Court remanded the matter for reconsideration

in light of its *Lawrence* decision.[79]  It seems clear that statutes such as Texas's are no

longer valid, and the state cannot imprison gay teenagers for engaging in conduct that is

perfectly legal for their heterosexual peers.

Even setting aside the constitutionality of Texas's discriminatory age of consent

law, surely Defendants do not believe that they are empowered to prevent discussion of

that law and other discrimination faced by gays and lesbians every day.    That is precisely

the reason the Lubbock GSA must be allowed to exist.  Certainly there would be no

question that a Hispanic student group can meet to discuss laws that discriminate against

Hispanic citizens.  Nobody would ever suggest that a Women's Student Group could be

barred from campus because they might discuss laws that they feel are discriminatory

toward women.  If anything, the fact that discriminatory statutes exist demonstrates why a

group like the Lubbock GSA is so desperately needed and why discussion of these issues

remains so vital.

This precise issue has already been roundly disposed of by the Fifth Circuit, which held

that "while Texas law may prohibit certain homosexual practices, no Texas law makes it a crime

---

[78] *Limon v. Kansas*, 123 S.Ct. 2638 (2003).

[79] *Id.*

to *be* a homosexual."[80] There is a vast gulf between discussion and action, and that gulf has been recognized time and again by American courts. Defendants' argument that merely allowing students to meet and discuss issues of great importance would lead to illegal activity has already been squarely rejected by the Fifth Circuit and cannot serve as a defense to Plaintiffs' claim.

The rights claimed by the Lubbock GSA are not about sexual intercourse or sexual activity. The Plaintiffs in this case claim the right to meet, the right to speak their minds, the right to discuss important issues, and the right to seek support from their peers. The Constitution and the Equal Access Act guarantee them these rights.

Inexplicably, Defendants further rely on the fact that the state of Texas regulates the age at which children can drink alcohol or drive a car, as if these statutes have some relevance to the present case.[81] Defendants also assert that children in Texas are not allowed to join gangs, nor are they allowed to carry weapons.[82] Defendants, however, fail to explain how any of these state statutes acts as an affirmative defense to the federal Equal Access Act or how any of them relate the case at bar. The members of the Lubbock GSA have not expressed any intention of getting drunk, buying guns, and driving around with street gangs. The members of the Lubbock GSA have merely asked for the opportunity to meet with their peers and discuss issues important to gay and lesbian young people. The Defendants have not asserted a single legally tenable reason

---

[80] *Gay Student Services*, 737 F.2d at 1329.

[81] Tex. Transp. Code Ann. § 729.001 (Vernon 1999); Tex Alco. Bev. Code Ann. §§106.01 and 106.02 (Vernon 1995).

[82] Tex. Pen. Code Ann. §§ 22.015, 46.13, and 71.002 (Vernon 2003).

why the members of the Lubbock GSA should be denied that basic right.  Accordingly, summary judgment is entirely proper.

### C.      Defendants Cannot Invoke A "Heckler's Veto."

Defendants claim that they censored the Lubbock GSA out of a concern for the smooth operation of the school, but when pressed they admit that any predicted "threats" or "disruption" would be caused by students other than the members of the Lubbock GSA.[83]  It is clear that defendants never had any reason to believe that the members of the Lubbock GSA might disrupt the educational process at LHS.[84]  Instead, Defendants unabashedly assert that threats of disruption by students opposed to the Lubbock GSA justify the denial of Plaintiffs' rights under the First Amendment and the Equal Access Act.  This assertion is clearly wrong.

The Supreme Court long ago rejected the concept of a "heckler's veto" in *Terminiello v. City of Chicago*.[85]  The Fifth Circuit has also rejected that argument in no uncertain terms, explaining that "students who would reasonably exercise their freedom of expression should not be restrained or punishable at the threshold of their attempts at expression merely because a small, perhaps vocal or violent, group of students with differing views might or does create a disturbance."[86]  The legally permissible response to harassment is to educate, and if necessary, to discipline potential offenders.

---

[83] App. at 15.

[84] App. at 84-85.

[85] 337 U.S. 1 (1949).

[86] *Shanley*, 462 F.2d at 974.

Other courts have recognized that the "heckler's veto" does not apply in the context of school gay/straight alliances. A school "may not deny equal access to a student group because student and community opposition to the group substantially interferes with the school's ability to maintain order and discipline, even though equal access is not required if the student group itself substantially interferes with student order and discipline."[87] The court goes on to hold that school administrators "are not permitted to restrict Plaintiffs' speech and association as a means of preventing disruptive responses to it."[88]

When pressed in his deposition, Defendant Clemmons admits that the Equal Access Act does not permit school officials to block a group merely because the members of that group express unpopular opinions that might lead to them being threatened by other students.[89] Despite this admission, Defendants continue to advance the fiction that the Lubbock GSA can be censored because other students might seek to disrupt the group or harass its members. Defendants' "defense" related to order and discipline at LHS is clearly a sham and a pretext and does not bar summary judgment in favor of the Plaintiffs.

**D.    Defendants' "Abstinence Only" Policy Is Irrelevant.**

One of the oddest, though most often repeated, affirmative defenses proffered by Defendants is that allowing the Lubbock GSA equal access to campus would run afoul of the LISD's "abstinence only" policy regarding sex. It is uncontested that Plaintiffs did state that they

---

[87] *Boyd County Gay Straight Alliance*, 258 F.Supp.2d at 690 (citing *Tinker*, 393 U.S. at 505-06).

[88] *Id.*

[89] App. at 12.

might talk about "safer sex" as one of many potential topics for discussion.[90] It is also

uncontested that LISD's policy forbids such discussion during classroom instruction.[91]

Defendants, however, fail to ever explain how a local school board policy could possibly serve as

an affirmative defense to a federal law or to the dictates of the United States Constitution.

One of the elements of a claim under the Equal Access Act is that the group seeking

access must be non-curricular.[92] As stated previously, the Supreme Court has held that groups

fall under the Equal Access Act only if "the subject matter of the group is actually taught, or will

soon be taught, in a regularly offered course; if the subject matter of the group concerns the body

of courses as a whole.[93] According to Defendants, the Lubbock GSA may not meet because it

runs afoul of the speech restrictions placed upon the curriculum at LHS, but according to the

Equal Access Act, speech that falls outside the curriculum is an *element* of a claim. Defendants'

argument that a non-curricular group must abide by the curriculum is facially contradictory and

unsupported by law or common sense. Students do not require the freedom to assemble so they

can agree with the curriculum.

The Fifth Circuit disposed of an identical defense nearly twenty years ago. In *Gay*

*Student Services v. Texas A&M University.* the court flatly stated that the fact that a gay

organization's "goals and purposes were not consistent with the philosophy and goals of [the

---

[90] *See* App. at 105.

[91] *See* App. at 19-23.

[92] 20 U.S.C.A. § 4071(b).

[93] *Mergens*, 496 U.S. at 239-40.

university]" was "clearly forbidden" as a reason for denying recognition.[94] The defendants in *Shanley* also asserted a board "policy" as a defense, but the policy was deemed irrelevant. The court noted that "when the constitutionality of a school regulation is questioned, it is settled law that the burden of justifying the regulation falls upon the school board."[95] The test for curtailing in-school exercise of expression is not whether the speech might contradict the officially approved elements of the curriculum, but rather whether or not the expression or its method of exercise "materially and substantially" interferes with the activities or discipline of the school.[96] The LISD has not even come close to meeting this burden. As the Fifth Circuit notes, "perhaps newer educational theories have become in vogue since our day, but our recollection of the learning process is that the purpose of education is to spread, not to stifle, ideas and views."[97] These words speak directly to the case at bar. The Defendants may disagree with the position of the Plaintiffs, but they are not empowered to silence them. The Lubbock GSA has the right to be treated exactly like every other group that is given access to the campus at LHS. Accordingly, Plaintiffs ask that this court grant summary judgment in their favor.

### E. Clemmons Cannot Claim Qualified Immunity.

The defense of qualified immunity is not applicable because Defendant Clemmons violated Plaintiffs' clearly established constitutional and statutory rights, and his conduct was not objectively reasonable. These arguments are fully set out in Plaintiffs' Response to Clemmons's

---

[94] *Gay Student Services*, 737 F.2d at 1327.

[95] *Shanley*, 462 F.2d at 968.

[96] *Id.* (citing *Burnside v. Byars*, 362 F.2d 744 (5th Cir. 1968).

[97] *Id.* at 971.

Plaintiffs' Brief in Support of Motion for Summary Judgment

Motion for Summary Judgment, which is incorporated by reference.

### F.    LISD And Its Officials Cannot Claim Eleventh Amendment Immunity.

It is well established that Eleventh Amendment immunity does not extend to a political subdivision such as a school district unless it is an "arm of the State" under the law of the state that created it.[98] In Texas, "an independent school district is more like a city or county than it is like an arm of the State of Texas and is amenable to suit in federal court under the Eleventh Amendment to the United States Constitution. The members of independent school district's board of trustees sued in their official capacities, likewise, are not protected by the Eleventh Amendment."[99] Accordingly, Defendants' assertion of Eleventh Amendment Immunity is without merit and cannot bar Plaintiffs' claim for summary judgment.

### Conclusion And Prayer For Relief

Plaintiffs respectfully request that the Court grant summary judgment in favor of Plaintiffs, permanently enjoining the Defendants from denying Plaintiffs equal access to facilities at Lubbock High School, granting damages, attorney's fees, and further granting Plaintiffs any other relief that the Court deems appropriate.

---

[98] *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

[99] *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 284 (Tex. 1996)

Respectfully Submitted,

LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas 75219-6722
(214) 219-8585 telephone
(214) 219-4455 facsimile

By:_____
      F. BRIAN CHASE
      Louisiana Bar Number 23450
      Florida Bar Number 996653

BARON & BUDD
A PROFESSIONAL CORPORATION
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 telephone
(214) 520-1181 facsimile

KEVIN D. MCHARGUE
Texas State Bar No. 00792309
MONTY WADE SULLIVAN
Texas State Bar No. 24008105
CARLA M. BURKE
Texas State Bar No. 24012490
SCOTT L. FROST
Texas State Bar No. 24015156
CHRIS J. PANATIER

Attorneys for Plaintiffs

## Certificate of Service

I certify that I mailed a copy of Plaintiffs Motion for Summary Judgment by U.S. Mail to Ann Manning, McWhorter, Cobb and Johnson, L.L.P., P.O. Box 2547, Lubbock, Texas on October 20, 2003.

By: F. BRIAN CHASE
Louisiana Bar Number 23450
Florida Bar Number 996653