IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**NOV - 7 2003**

CLERK, U.S. DISTRICT COURT

By _____
         Deputy

| | | |
|---|---|---|
| YVONNE CAUDILLO by next friend Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § § | Civil Action No. 5-03CV0165-C |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District, | § § § § § § § § § | |
| Defendants | § § | |

---

## DEFENDANTS' LUBBOCK INDEPENDENT SCHOOL DISTRICT, WAYNE HAVENS, FRED HARDIN AND DR. JACK CLEMMONS' BRIEF IN SUPPORT OF RESPONSE AND OBJECTIONS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF

---

McWHORTER, COBB AND JOHNSON, L.L.P.
1722 Broadway
Post Office Box 2547
Lubbock, Texas 79408-2547
806/762-0214
806/762-8014 (FAX)

Ann Manning
State Bar No. 12950100
R. Michael McCauley, Jr.
State Bar No. 00797030
Timothy T. Pridmore
State Bar No. 00788224

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  ISSUES OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Plaintiffs did not meet their burden under § 1983 to attach liability to LISD . . . . 3

        1.  LISD policy and custom regarding limited open forum
            is not unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.  Plaintiffs cannot establish that LISD's policymakers had
            knowledge that the policy was unconstitutional . . . . . . . . . . . . . . . . . . . 6

        3.  No constitutional violation occurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            (a)  LISD invoked the well-being exception based on
                 sexual content speech and sexual activity . . . . . . . . . . . . . . . . . . . 9

            (b)  In light of the purpose served by the forum, the
                 well-being exception is invoked because of the
                 constitutionally permissible distinctions between
                 children and adults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        4.  The custom or policy did not serve as the moving force
            behind the violation, if any, because LISD did not act
            with deliberate indifference to Plaintiffs' constitutional
            or statutory rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        5.  *Meadowbriar* Elements Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    B.  Defendants' affirmative defenses are clearly supported by law and
        support all actions taken by Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.  Congress clearly contemplated a broad exception for the
            protection of the "well-being of students" in the Equal
            Access Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

2.      State law clearly prohibited the conduct and activity
promulgated by Plaintiffs, both at the time it initially
denied Plaintiffs' request to meet on campus and at
the present time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3.      LISD appropriately invoked the exception for disruption . . . . . . . . . . . 23

4.      Defendant, Jack Clemmons, is entitled to qualified immunity . . . . . . . . 24

V.       **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed.R.Civ.P. 56(c))  . . . 2, 3

*Bellotti v. Baird*, 443 U.S. 622 (1979)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Benavides v. County of Wilson*, 955 F.2d 968 (5th Cir. 1989) cert. den.
    101 S.Ct. 2617 (1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bethel Sch. Dist. v. Fraser*, 478 U.S. 675 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 15, 16, 17

*Butts v. Dallas Ind. Sch. Dist.*, 436 F.2d 728 (5th Cir. 1971)  . . . . . . . . . . . . . . . . . . . . . . . 7, 24

*Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chevron USA, Inc. v. Natural Resosurces Defense Council, Inc.*, 467 U.S. 837, 843 (1984)  . . 21

*City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)  . . . . . . . . . . . . . . . 8

*City of Canton v. Harris*, 489 U.S. 378 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788 (1985)  . . . . . . . . . . . . . . 8

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)  . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Edwards v. Aguillard*, 42 U.S. 578 (1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Eisner v. Stamford Bd. of Educ.*, 440 F.2d 803 (2nd Cir. 1971)  . . . . . . . . . . . . . . . . . . . . . . . 24

*Ginsberg v. State of New York*, 390 U.S. 629 (1968)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gonzalez v. Ysleta Ind. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993)  . . . . . . . . . . . . . . . . . . . . . . 18

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001)  . . . . . . . . . . . . . . . . . . . . . . . . 7

*Greer v. Spock*, 424 U.S. 828 (1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) . . . . . . . . . . . . 9

*Lawrence v. Texas*, 123 S.Ct. 2472 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Circ. 1996) . . . . . 4, 6

*Medina v. Denver*, 960 F.2d 1493 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*New Jersey v. TLO*, 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Norton v. Discipline Comm. of East Tennessee St. Univ.*, 419 F.2d 195 (6th Cir. 1969)
      cert den'd, 399 U.S. 906 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oden v. Oktibbeha County*, 246 F.3d 458, cert. den. 534 U.S. 948 (2001) . . . . . . . . . . . . . . . . 4

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Owen v. Independence*, 445 U.S. 622 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Prince v. Massachusetts*, 321 U.S. 158 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Procunier v. Navarette*, 434 U.S. 555 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398,
      113 S.Ct. 187 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Richards v. Thurston*, 424 F.2d 1281 (1st Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) . . . . . . . . . . . . . 7

*Schleifer v. City of Charlottesville*, 159 F.3d 843 (4th Cir. 1998),
      cert den. 526 U.S. 1018 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shanley v. Northeast Ind. Sch. Dist.*, 462 F.2d 960 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . 7, 24

*Tinker v. Des Moines Ind. Smty. Sch. Dist.*, 393 U.S. 503 (1969) . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATE STATUTES

TEX. PENAL CODE ANN. §21.06 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 23

TEX. PENAL CODE ANN. §21.11 (Vernon 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 23

## FEDERAL STATUTES

13 U.S.C. § 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

20 U.S.C. §1681(a)(2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

20 U.S.C. § 4071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 23

28 U.S.C. § 2201-02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

130 Cong. Rec., 19211-19252 (daily ed. June 27, 1984) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

U.S. Office of Civil Rights (January 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| YVONNE CAUDILLO by next friend Brenda Caudillo; MIRAH EPSTEIN CURZER by next friend Howard Curzer; and LUBBOCK HIGH SCHOOL GAY STRAIGHT ALLIANCE, an unincorporated association, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 5-03CV0165-C |
| LUBBOCK INDEPENDENT SCHOOL DISTRICT; WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent School District; DR. JACK CLEMMONS, individually; FRED HARDIN, in his official capacity as Assistant Superintendent for Secondary Schools of Lubbock Independent School District, | § § § § § § § § § § | |
| Defendants | § | |

**DEFENDANTS LUBBOCK INDEPENDENT SCHOOL DISTRICT,
WAYNE HAVENS, FRED HARDIN and JACK CLEMMONS'
BRIEF IN SUPPORT OF RESPONSE AND OBJECTIONS TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND BRIEF**

COMES NOW Defendants, LUBBOCK INDEPENDENT SCHOOL DISTRICT ("LISD"),

WAYNE HAVENS, in his official capacity as Acting Superintendent of Lubbock Independent

School District ("Havens"), Fred Hardin, in his official capacity as Assistant Superintendent for

Secondary Schools of Lubbock Independent School District ("Hardin"), and Dr. Jack Clemmons,

Individually ("Clemmons"), and file this their Brief in Support of Response and Objections to

Plaintiffs' Motion for Summary Judgment and Brief in Support Thereof and would show the Court

the following:

## I.

### ISSUES OF LAW

1.      **Whether Plaintiffs are entitled to summary judgment as a matter of law based on Plaintiffs' § 1983 claims which require that LISD have a policy or custom which violates the Equal Access Act.**

2.      **Whether Plaintiffs are entitled to summary judgment as a matter of law based on Plaintiffs' § 1983 claims which require that LISD have a policy or custom of abridging Plaintiffs' freedom of speech and association by denying access to a limited public forum on the basis of the content and viewpoint of their speech.**

## II.

### STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986) (quoting FED. R. CIV. P. 56 (c)).   When the ultimate trial burden rests with his opponent, the

movant need only "[point] out to the district court" an absence of evidence to support the opponent's

case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).   Whether a fact is material depends upon

whether it will affect the outcome at trial.  *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev.*

*Corp.* 992 F.2d 1398, 113 S.Ct. 187 (5th Cir. 1993). The Court's function is not to determine the

"true" facts of the case, but only to determine if "there is sufficient evidence favoring the non-

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 2

moving party for the jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The court ignores "colorable" or insignificant evidence and renders judgment if the record supports one reasonable conclusion." *Anderson*, 477 U.S. at 249-51. In making this determination, the court must view the evidence in the light most favorable to the non-movant, affording the party the benefit of all reasonable impressions that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III.

## FACTUAL BACKGROUND

Defendants refer to and incorporate by reference herein the factual background included in their Response and Objections to Plaintiffs' Motion for Summary Judgment which is incorporated herein by reference for all purposes.

## IV.

## ARGUMENTS AND AUTHORITIES

Defendants adopt herein and incorporate for all purposes the legal arguments and authorities contained in Defendants', Lubbock Independent School District, Wayne Havens, in his official capacity as Acting Superintendent, and Fred Hardin, in his official capacity as Assistant Superintendent for Secondary Schools, Brief in Support of Motion for Summary Judgment in its entirety filed with this Court on October 20, 2003.

**A.    Plaintiffs did not meet their burden under § 1983 to attach liability to LISD.**

In order for Plaintiffs to prevail, they must meet the requirements set out in 42 U.S.C. § 1983 ("§ 1983") cases. *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989). The Supreme Court held that

Congress intended §1983 to be the sole remedy for discrimination by persons acting under color of state law. *Jett*, 491 U.S. at 731. In *Jett*, the plaintiffs alleged a 42 U.S.C. § 1981 ("§ 1981") violation and because §1983 provided a remedy against persons acting under color of state law, the Court declined to imply a cause of action under § 1981 independent of § 1983. *Id.* Thus, the § 1983 standards were applied to *Jett*'s §1981 cause of action.

Likewise, in the case at bar, Plaintiffs are using § 1983 to provide the remedy for Defendants' alleged violation of the Equal Access Act, 20 U.S.C. § 4071 (2003) *et seq.* ("Equal Access Act") and First Amendment claims. Thus, their causes of action cannot be independent of § 1983, and Plaintiffs must comply with § 1983 requirements in order to attach liability to LISD.[1] Plaintiffs have failed to do so.

To recover under a theory regarding an unconstitutional policy, a plaintiff must plead and prove each of the following four elements:

(1)     an unconstitutional policy existed;

(2)     the governmental policymakers actually or constructively knew of its existence;

(3)     a constitutional violation occurred; and

(4)     this custom or policy served as the moving force behind the violation.

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). LISD asserts that Plaintiffs cannot meet all of the elements set forth in *Meadowbriar*.

---

[1]This § 1983 remains the only provision to expressly create a remedy against persons acting under color of state law even after the 1991 amendments. Oden v. Oktibbeha County, 246 F.3d 458, 463, cert. den. 534 U.S. 948 (2001).

1. **LISD policy and custom regarding limited open forum is not unconstitutional.**

Plaintiffs complain that Defendants denied them equal access to a limited open forum on the basis of the content and viewpoint of their speech in violation of the Equal Access Act and in violation of their First Amendment rights. Plaintiffs cannot meet the elements to infer liability under § 1983.

First, the policies at issue are LISD Board Policy FNAB (LEGAL), wherein the Board has established a limited open forum pursuant to the Equal Access Act [LISD MSJ App. at pp. 28-30], and LISD Board Policy FNA (LEGAL). [LISD MSJ App. at 719]. The Equal Access Act states, to-wit:

> (a) Restriction of limited open forum on basis of religious, political, philosophical, or other speech context prohibited. It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.
>
> . . .
>
> (f) Authority of schools with respect to order, discipline, well-being, and attendance concerns. **Nothing in this title [20 USCS §4071 et seq.] shall be construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students** and faculty, and to assure that attendance of students at meetings is voluntary.

20 U.S.C. § 4071 (2003) (emphasis added).

Plaintiffs cannot establish that LISD's policy is unconstitutional. First, the policy is based on a federal statute, the Equal Access Act. *Id.* Second, the Board adopted its policy in compliance with the Equal Access Act. [LISD MSJ App. at 519]. Third, LISD officials appropriately

implemented the exceptions stated in section (f) of the Equal Access Act, that being, protection of

the well-being of students (well-being exception) and maintaining order and discipline (disruption

exception). [LISD MSJ App. at 641, 644, Clemmons Dep. 25:8-21, 34:1-17, 45:6-25, 46:1-25, 47:1-

20; LISD MSJ App. at 530; LISD MSJ App. at 600, 601, Hardin Dep. 19:9-25, 20:1-25, 21:1-12].

In that regard, the U.S. Supreme Court has allowed regulation of student speech based on material

and substantial disruption, *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), and on

vulgar and lewd speech. *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675 (1986). There is no violation of

one's freedom of speech or association when there is a legitimate need for regulation of the speech.

It is important to note that the *Tinker* case involved symbolic expression, which was

meaningful to the students. To the contrary, in *Bethel Sch. Dist.*, the U.S. Supreme Court ruled that

expression with regard to sex is not entitled to constitutional protection. *Id.* Just as the Supreme

Court held that sexually explicit speech in an educational setting was not protected in *Bethel Sch.

Dist.*, this Court should likewise find the same in this case. Thus, the policy or custom is not

unconstitutional and Plaintiffs have failed to produce any summary judgment evidence in support

of same.

2.      **Plaintiffs cannot establish that LISD's policymakers had knowledge that the
        policy was unconstitutional.**

As to the second *Meadowbriar* element, Plaintiffs have no summary judgment evidence to

prove that LISD policymakers knew that the policy was unconstitutional. *Meadowbriar* 81 F.3d at

532-33. To the contrary, in September 2002 through January 2003 Clemmons, Havens and Hardin

were aware that there were no reported cases in the Fifth Circuit nor the U.S. Supreme Court that

addressed recognition of clubs under the Equal Access Act based on sex and sexual activity in a secondary public school where students twelve (12) years of age and older are involved. [LISD MSJ App. at 672-673; LISD MSJ App. at 530]. Further, the U.S. Supreme Court had previously held in *Bethel Sch. Dist.* 478 U.S. at 675, and *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), that authority given to regulate speech with a sexual content was constitutional. Additionally, case law existed which authorized LISD to regulate speech and association where there was a "reasonable forecast" of disruption. *Butts v. Dallas Ind. Sch. Dist.*, 436 F.2d 728, 731 (5th Cir. 1971); *Norton v. Discipline Comm. of East Tennessee St. Univ.*, 419 F.2d 195, (6th Cir. 1969) cert. den'd, 399 U.S. 906 (1970); *Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1971). Further, case law authorized prior restraint of content where materials are obscene or inflammatory. *Shanley v. Northeast Ind. Sch. Dist.*, 462 F.2d 960, 971 (5th Cir. 1972). LISD officials believed their implementation of the exceptions to the Equal Access Act conformed to the existing law. [LISD MSJ App. at 644, Clemmons Dep. 45:1-25, 46:1-25, 47:1-20; LISD MSJ App. at 600-601, Hardin Dep.19:9-25, 20:1-25, 21:1-2]. As such, LISD had neither actual nor constructive knowledge that the policy in question was unconstitutional. Thus, Plaintiffs have failed to produce any summary judgment evidence in support of same.

### 3. No constitutional violation occurred.

The third *Meadowbriar* element requires that an actual constitutional violation must have occurred. It is well settled law that, when the state establishes a limited open forum, there is no requirement to allow individuals to engage in every type of speech. *See, Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). In so doing, the state is allowed to reserve its forum for the

discussion of certain topics. *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995).

Accordingly, the Equal Access Act specifically allows the school district to restrict access to protect the well-being of students and to maintain order and discipline. 20 U.S.C. §4071(F)(2003). The school district has the latitude to "preserve the property under its control for the use to which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836 (1976). Further, "control over access to a non-public forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985). Viewpoint discrimination is defined as "regulation of speech in ways that favor some viewpoints or ideas at the expense of others." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).

Additionally, the First Amendment to the United States Constitution provides for freedom of speech, as well as freedom of association. These rights to associate for expressive purposes and for freedom of speech are not absolute. The right may be infringed upon when justification is to serve a compelling state interest. *See, Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

It is clear from the evidence that LISD involved both the well-being exception and the exception to maintain order and discipline in its application of its limited open forum. There was further no constitutional violation as alleged by Plaintiffs in that Defendants' actions did not result in viewpoint discrimination.

     (a)    **LISD invoked the well-being exception based on sexual content speech and sexual activity.**

Initially, we must address whether LISD and Defendants' actions constituted viewpoint discrimination. In the present case, it did not. The restriction is not viewpoint discriminatory because LISD invoked the well-being exception in response to Texas state law, federal law and LISD policy.

In accordance with both federal and Texas state law, LISD closed its limited open forum to all issues relating to sex and sexual activity for the well-being of its students. Plaintiffs' attempted use of *Lamb's Chapel's*[2] prohibition of regulating religious speech is clearly misguided and distinguishable from this case as regulation of sexual activity speech is clearly a permissible exception to the Equal Access Act. At the time of LISD's denial to Plaintiffs, the State of Texas had a law banning sodomy. TEX. PENAL CODE ANN. § 21.06 (Vernon 2003). Subsequently, on June 26, 2003, the U.S. Supreme Court struck down this statute as being unconstitutional. *Lawrence v. Texas*, 123 S.Ct. 2472 (2003). However, at the time LISD refused to grant access to Plaintiffs for their on campus meetings and when the decisions made the basis of Plaintiffs' claims were determined, such statute was legally controlling.

Notwithstanding the Supreme Court's decision, at the time of the denial, as well as presently, Texas had other special protections regarding sexual contact with children. Under current Texas law, TEX. PENAL CODE ANN. § 21.11(a) (Vernon 2003), it is the crime of "indecency with a child" when sexual contact is made with a child by the same or opposite sex. While there is an affirmative defense permitting unforced sexual contact between an actor who is not more than three years older

---

[2] *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 393 (1993).

than the victim and is of the opposite sex, there is **no** affirmative defense for sexual contact between an actor and a child of the same sex to have sexual contact, no matter the age difference. TEX. PENAL CODE ANN. § 21.11(b) (Vernon 2003).

Further, LISD has an abstinence policy in teaching matters of sexual activity and sexual contact. In its abstinence policy, LISD takes the position that there is no such thing as safe sex outside of a monogamous relationship. [LISD MSJ App. at 521]. LISD's policy precludes a discussion of the sexual activity itself. [LISD MSJ App. at 521.] LISD currently takes, and took at the time the subject of this lawsuit, a neutral position in its application of the policy regarding sexual activity; that being, there should be none. [LISD MSJ App. at 521.] LISD allowed no latitude for discretionary decisions or acts that could be made in this regard.

LISD provides for the well-being of the student. In this regard, LISD must encourage students to comply with Texas law by not being in direct contravention of existing laws. Allowing clubs based on sexual activity would be encouraging direct contravention of said laws. TEX. PENAL CODE ANN. §§ 21.06 and 21.11(a). Moreover, the very definition of homosexual[3] and heterosexual[4] is determined by the type of sexual intercourse.

---

[3] By definition, "homosexual" is defined as:
> (1) of, relating to, or characterized by a tendency to direct sexual desire towards another of the same sex; and
> (2) of, relating to, or involving sexual intercourse between persons of the same sex.
*Miriam Webster Dictionary (2003)*.

[4] By definition, "heterosexual" is defined as:
> (1) of, relating to, or characterized by a tendency to direct sexual desire toward the opposite sex; and
> (2) of, relating to, or involving sexual intercourse between individuals of the opposite sex.
*Miriam Webster Dictionary (2003)*.

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief
Page 10

Additionally, federal law requires public schools' restriction of speech having sexual content. Congress requires school officials to prohibit access to websites which contain any words that have any form of sexual content. *Children's Online Privacy Protection Act of 1998*, 13 U.S.C. §1301, *et seq.* School districts are **required** to place filters for any form of speech with any sexual content on all school district computers to which children have access. **Failure of the school officials to prohibit this activity can result in the loss of federal funding.** *Id.* LISD is in compliance with the foregoing federal statute.

Plaintiffs' stated objections and goals presented to LISD, by definition, were in violation of Texas law and in violation of the abstinence policy of LISD. Further, the intended purposes of the group as stated in their letter to the LISD Board dated November 6, 2002, [LISD MSJ App. at 674] are "to educate those willing about non-heterosexuals" and "educate willing youth about safe sex, AIDS, hatred, etc." [LISD MSJ App. at 674.] The group further stated in its letter, "We will not be the ones making the decisions about their sexuality and we will be working with other organizations, councilors [sic], etc. to provide the best help possible." [LISD MSJ App. at 674].

In consideration of the decision to apply the well-being exception, the evidence showed that Rene Caudillo ("Caudillo"), the President of GAP Youth/GSA, [LISD MSJ App. at 542: Caudillo Dep. 21:1-14], requested that his group place fliers on the Lubbock High School ("LHS") campus in September 2002. [LISD MSJ App. at 559: Caudillo Dep. 89:16-24]. On the flier, a website was posted. [LISD MSJ App. at 593]. Caudillo created the website, **http://hometown.aol.com/gapcrew/GAPyouth.html**. [LISD MSJ App. 1 - 9, LISD MSJ App. at 593]. (The website was available, as reflected in LISD MSJ App. 1 and 2, on the date of Caudillo's

deposition, September 15, 2003). [LISD MSJ App. at 547, Caudillo Dep. 41:23-25]. Caudillo testified that he intended the website for everyone. [LISD MSJ App at 546, 570: Caudillo Dep. 37:16-38:22; 134:5-10]. Caudillo further testified that one purpose for creating the website was to provide information helpful to students and it was intended to be fun. [LISD MSJ App. at 570: Caudillo Dep. 134:13-18]. Caudillo was responsible for the information contained on the website. [LISD MSJ App. at 570: Caudillo Dep. 134:8-11]. The GAP Youth website included links available on the website. [LISD MSJ App. at 543: Caudillo Dep. 28:9-12]. Initially, the links were added, including **www.gay.com.** [LISD MSJ App at 558, 559, 560, Caudillo Dep. 85:10-15; 92:17; 93:6; LISD MSJ App. 3 at 675-689]. The exhibit attached as LISD MSJ App. 3 at 675-689 was the same information available through the GAP Youth webpage when Caudillo first created it. [LISD MSJ App. at 561: Caudillo. 97:3-7]. Later, additional links were added, **www.youthresource.com**. [LISD MSJ App. at 544: Caudillo Dep. 32:18-25; LISD MSJ App. at 10-511]. The main category of links included Gays, Lesbians, Bisexuals and Transyouth. [LISD MSJ App. at 546: Caudillo Dep. 37:14-20]. The foregoing was available on the GAP Youth website as of January 1, 2003. [LISD MSJ App. at 8].

Caudillo testified that the GAP Youth website, when listed on the fliers, initially provided access to **www.gay.com** [LISD MSJ App. at 560: Caudillo Dep. 95:19] which included very suggestive topics. For example, "New Sexy Gay Game Pics" [LISD MSJ App. at 560: Caudillo Dep. 95:9, LISD MSJ App. at 679]. Another topic, "Favorite Questions," included articles on: 1) "Why am I having erection problems?; 2) How Safe is Oral Sex? ; 3) The Truth About Barebacking; 4) First Time With Anal Sex; 5) Kissing and Mutual Masturbation; 6) How Safe Are Rimming and

Fingering?; 7) The Lowdown on Anal Warts." [LISD MSJ App. at 560, Caudillo Dep. 96:14-17; LISD MSJ App. 3 at 681]. This type of information was available through Caudillo's web page for GAP Youth when it was first created and listed on GAP Youth fliers. [LISD MSJ App. 560-561, Caudillo Dep. 96:24- 97:7; LISD MSJ App. 683-689].

Information available through the GAP Youth website links available on January 1, 2003, on **www.youthresource.com** include examples of multiple references to sex which specifically talked about sexual activity. [LISD MSJ App. at 550: Caudillo Dep. 53:21-25].

In applying to post the GAP Youth fliers, Caudillo and others met with Hardin. In Caudillo's meeting with Hardin, Caudillo testified that Hardin said he had looked over the website. [LISD MSJ App. at 559: Caudillo Dep. 92:7-12]. Caudillo referred to the contents of the website linking to **www.gay.com.** [LISD MSJ App. at 559: Caudillo Dep. 92:21-24], which he admitted were inappropriate. [LISD MSJ App. at 559, Caudillo Dep. 92:13-15].

According to Caudillo, the **Gay.Com** link was removed from its website at some time after requesting permission to place GAP Youth fliers. [LISD MSJ App. at 562, Caudillo Dep. 102:13-14]. However, the **youthresource.com** link was still on the GAP Youth website when Hardin reviewed the website in January 2003, before making his final decision denying GAP Youth recognition and informing the group of same. [LISD MSJ App. at 601, 614: Hardin Dep. 23:15 and 74:2; LISD MSJ App. 1 at 8]. Sexual content and sexual activity continued to be on the website links promulgated by GAP Youth at the first request to place fliers and the final request for access. [LISD MSJ App. at 612-614, Hardin Dep. 67:2-25, 68:1-25, 69:1-2, 72:11-25, 73:12-25, 74:1-2].

The purposes of GAP Youth clearly were based on sex and sexual activity. Even if the website was removed, the sexual basis upon which it was formed could not be separated from the group itself, for its purpose was to discuss heterosexuality and homosexuality, which by definition all are based on sexual activity. The group's purpose included a discussion of safe sex. [LISD MSJ App. at 718]. Further, the group intended to provide website links regarding safe sex, which is sexual activity as evidenced on the GAP Youth website and stated purposes, [LISD MSJ App. 1 at 1-9 and LISD MSJ App. 2 at 10 - 511; LISD MSJ App. at 718.] and which was against LISD's abstinence policy. [LISD MSJ App. at 521].

Clearly, LISD did not violate the Equal Access Act. The Act provides school officials the authority to review the application of the group to see if it falls into one of the Equal Access Act's exceptions. It is clear that the statutory exception "to protect the well-being of the student" applies in this case. Similarly, the U.S. Supreme Court has allowed restriction of material with sexual content to minors in *Ginsberg v. State of New York*, 390 U.S. 629 (1968). The material was patently offensive according "to prevailing standards in the adult community as a whole with respect to what is suitable material for minors and [was] utterly without redeeming social importance for minors." *Id* at 638. Likewise, the material in the websites available through Plaintiffs' websites were, indeed, not suitable for children. In no way did Congress intend to prohibit school officials from controlling access of clubs to its school when it is against federal law, State law, school policy, and when the activities involve promoting sexual activity for children from age 12 to 17. Such activity is clearly not in the best interest of the children and is contrary to the well-being of children.

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 14

Furthermore, there is a compelling state interest in preventing groups based on sex, sexual content and sexual activity from gaining access and recognition at a public secondary school. LISD's compelling state interest, and that of any other school district, is for the health and well-being of the children. It is of utmost importance to protect the students' mental health and physical well-being resulting from teen pregnancy, sexually transmitted diseases and removal from the educational setting as a result. Discouraging sexual activity of minors clearly meets the compelling interest test.

Constitutional freedoms are not co-existent with the rights of adults in other settings. *Bethel Sch. Dist.*, 478 U.S. at 682. Thus, the balancing test must be invoked to determine whether the freedom of speech and association outweighs society's countervailing interest in teaching students the boundaries of socially appropriate behavior. *Id* at 681. Applying the balancing test to the facts at hand, it is clear that LISD did not violate Plaintiffs' constitutional rights as LISD has a compelling state interest to protect the health of the school children and to discourage sexual activity of the children, especially that which is illegal. This compelling interest overrides Plaintiffs' free speech and association rights as the Federal Constitution does not compel school officials " to surrender control of the American public school system to public school students." *Bethel Sch. Dist.,* 478 U.S. at 526.

Therefore, LISD did not deprive Plaintiffs of a statutory right because it legitimately, with authority, implemented the well-being exception to the Equal Access Act. Not only was it LISD's right to do so, but it was also LISD's duty and obligation to do so.

**(b)     In light of the purpose served by the limited open forum, the well-being exception is invoked because of the constitutionally permissible distinctions between children and adults.**

Clearly, the law is well-established that children's constitutional rights do not always equate to the constitutional rights of adults. In *Bellotti v. Baird*, 443 U.S. 622, 634 (1979), the U.S. Supreme Court established a three-prong test to determine when the constitutional rights of children do not equate to the constitutional rights of adults. Under the *Bellotti* analysis, one must prove: 1) a peculiar vulnerability of minors; 2) a minor's inability to make critical decisions in an informed, mature manner; and 3) the importance of the parental role in child-rearing. *Id.* This test has been applied to many legal restrictions for minors under both State and federal law.

Laws more restrictive to minors, which laws are stated in more detail in Defendants' Brief in Support of Motion for Summary Judgment, reflect the state's "general interest in the youth's well-being." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Governmental entities have a "strong interest in fostering the welfare of children and protecting the youngest members of society from harm is well-established." *Schleifer v. City of Charlottesville*, 159 F.3d 843, 848 (4th Cir. 1998), cert den. 526 U.S. 1018 (1999).

"The constitutional rights of students in public school are not automatically co-extensive with the rights of adults in other settings." *Bethel Sch. Dist*, 478 U.S. at 682. Even though the First Amendment guarantees wide freedom in matters of adult speech, it does not follow that the same latitude must be permitted to children in a public school. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-42 (1985). A balancing test must be placed for the freedom of speech against society's countervailing

interest in teaching students the boundaries of socially appropriate behavior as established by the school board. *Bethel Sch. Dist.* 478 U.S. at 681.

The Equal Access Act's limited open forum applies to children as young as 12 years of age (seventh grade). Introducing matters of sex and sexual activity at such a young, tender age is not an appropriate forum. Allowing a group to organize to talk about matters of sexual activity, whether homosexual or heterosexual, is inappropriate. Therefore, since the *Bellotti* standard is met, LISD has additional authority to invoke the well-being exception to the Equal Access Act.

In essence, it is clear that LISD did not exclude Plaintiffs from access pursuant to the Equal Access Act based on viewpoint discrimination, rather, it was based on State law, federal law and the neutral LISD abstinence policy concerning these sensitive subjects. LISD had the authority to exclude the group based on the well-being exception to the Equal Access Act as the distinction between children compared to adults warrants a difference in application. *Edwards v. Aguillard*, 42 U.S. 578, 584 (1987). Thus, LISD had no constitutional violation and Plaintiffs have failed to produce any summary judgment evidence in support of same.

**4. The custom or policy did not serve as the moving force behind the violation, if any, because LISD did not act with deliberate indifference to Plaintiffs' constitutional or statutory rights.**

Section 1983 provides a remedy to a plaintiff only if the policymakers acted with deliberate indifference to the constitutional or statutory rights of Plaintiffs. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The U.S. Circuit Courts have uniformly interpreted *Canton's* "deliberate indifference" requirement in cases involving facially constitutional policies, as evidenced by the Ninth Circuit decision:

The existence of a policy, without more, is insufficient to trigger local government liability under § 1983. Under *City of Canton*, before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy "evidences a 'deliberate indifference'" to its constitutional rights.

*Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *Canton*, 489 U.S. at 389). *Benavides v. County of Wilson*, 955 F.2d 968, 972-75 (5th Cir. 1989) cert den. 101 S.Ct. 2617 (1990) (before holding a city liable for a policymakers mistake in personnel decisions § 1983 required a showing of deliberate indifference). It has been further noted that,

Neither the language nor the legislative history of § 1983 indicates that Congress intended to prove remedies for negligent acts, I would hold that one who does not intend to cause and does not exhibit deliberate indifference to the risk of causing the harm that gives rise to a constitutional claim is not liable for damages under § 1983."

*Procunier v. Navarette*, 434 U.S. 555, 568 (1978) (Berger, C.J., dissenting). "Further, negligence and gross negligence do not give rise to § 1983 liability." *Medina v. Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992). A school district may be held liable only if the board of trustees' decision manifested a deliberate indifference to the welfare of school children. *Gonzalez v. Ysleta Ind. Sch. Dist.*, 996 F.2d 745, 760 (5th Cir. 1993). The Fifth Circuit further held in *Gonzalez* that,

Inadequate, but constitutional policies and decisions rise to the same action plane as the unconstitutional policies considered in *Monell*[5], *Owen*[6], *Newport*[7] and *Pembaur*[8] only if a showing that they were enacted or made with deliberate indifference to their possible unconstitutional consequences.

*Id.* at 759.

---

[5] *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

[6] *Owen v. Independence*, 445 U.S. 622 (1980).

[7] *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

[8] *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986).

---

In applying the law to the facts of this case, it is clear that there is no summary judgment evidence that the LISD policymakers acted with deliberate indifference to the constitutional rights of the Plaintiffs so as to find the policymakers intentionally chose to ignore those rights. To the contrary, there is substantial evidence that LISD adopted policies that were constitutional and protected student's rights. [LISD MSJ App. at 719]. Further, LISD carefully applied the Equal Access Act and its exceptions to Plaintiffs. First, LISD considered the application of Plaintiffs and reviewed its purposes. [LISD MSJ App. at 719; LISD MSJ App. at 593; LISD MSJ App. at 598, 599, Hardin Dep 12:24-13:10]. Second, the flier that was presented included a website which Hardin and Vogler reviewed. [LISD MSJ App. at 1-511; LISD MSJ App. at 598, 599, Hardin Dep. 12:24-13:10; LISD MSJ App. at 559, Caudillo Dep. 92:7-12; LISD MSJ App. at 593]. Third, Hardin met with the student applicants and their parents. [LISD MSJ App. at 559, Caudillo Dep.90:3-5, 92:7-12]. Fourth, as indicated hereinabove, the website showed inappropriate material which had a sexual content and described sexual activity. [LISD MSJ App. at 1-511; LISD MSJ App. at 612, 613, Hardin Dep. 67:18; 70:4]. Fifth, Hardin and Clemmons were aware of the LISD Abstinence Policy. [LISD MSJ App. at 528; LISD MSJ App at 670]. Sixth, Hardin and Clemmons were aware of the *Children's Online Privacy Protection Act of 1998* which required the school district to place filters on its computers for speech with a sexual content. [LISD MSJ App. at 599, Hardin Dep. 13:11-14; LISD MSJ App. at 641, Clemmons Dep. 36:2-6]. Seventh, Hardin and Clemmons were both aware of State law which prohibited sex with minors. [LISD MSJ App. at 527; LISD MSJ App. at 669-670]. Eighth, Hardin and Clemmons were both aware of issues regarding harassment and potential disruption by means of telephone calls and visiting with school administrators. [LISD MSJ App. at 602, Hardin Dep. 25:8 - 26:10; LISD MSJ App. at 644, Clemmons Dep. 46:9- 47:12, 47:21 -

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 19

48:21, 45:17 - 46:9]. Finally, Clemmons and Hardin based their decisions on the above and believed that they were well within the exceptions to the Equal Access Act of the well-being and disruptive exceptions to the Equal Access Act. [LISD MSJ App. at 527; LISD MSJ App. at 669].

Thus, LISD did not act with deliberate indifference to the constitutional or statutory rights of Plaintiffs. To the contrary, they carefully assessed the situation, applied the facts to the Equal Access Act and its Board policy, the abstinence policy, State law and federal law, GAP Youth's purposes and its website with links in order not to violate any of Plaintiffs' constitutional or statutory rights.

In the alternative, assuming arguendo that LISD made the wrong decision, it was a negligent decision at best which is not actionable under § 1983. *Medina,* 960 F.2d at 1500 .

### 5.    *Meadowbriar* Elements Summary

Plaintiffs cannot prove each and every element set forth in the *Meadowbriar* test in order to attach liability to LISD, Havens and Hardin under § 1983. Therefore, Plaintiffs' claims must fail and Plaintiffs are not entitled to judgment as a matter of law for Plaintiffs' claims of violation of the Equal Access Act, § 1983 and 42 U.S.C. § 1988, and for Declaratory Relief pursuant to 28 U.S.C. §§ 2201-02.

**B.    Defendants' affirmative defenses are clearly supported by law and support all actions taken by Defendants.**

### 1.    Congress clearly contemplated a broad exception for the protection of the "well-being of students" in the Equal Access Act.

At issue is the statutory construction of the exception to the Equal Access Act, whether or not the phrase "to provide for the well-being of students and faculty" is a separate exception or is subsumed within the disruptive activities exception. It is well settled that the courts determine all

issues of statutory construction. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). In so doing, the Court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter,... If, however, the Court determines Congress has not directly addressed the precise question at issue,...the question for the Court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

Contrary to Plaintiffs' representations and contentions, in applying the rules of statutory construction it is clear that the Congressional Record makes provision for applying the exception, "to provide for the well-being of students" separately and apart from maintaining order and discipline as hereinbelow evidenced.

The foregoing fact is specifically illustrated by comments from the same Senator, Senator Danforth, that Plaintiffs attempt to quote to establish their contention of the narrow application of this exception. Senator Danforth states,

> But that is the intention of the amendment, to try to provide the school administration with the power to prevent the abuse of this freedom, and to try to prevent the interference with the psychological welfare or the **well-being of the kids**.

130 Cong. Rec., 19229 (daily ed. June 27, 1984) (statement of Mr. Danforth) (emphasis added). [Response App. at 739].

Further, Senator Danforth states,

> Senator Hatfield has spoken about First Amendment rights, and clearly that issue is at stake in the Hatfield amendment. The First Amendment applies to everybody, to young people and to old people. The right to worship, the right to assembly, the right to speak, these are fundamental rights in our Constitution and they are rights which Senator Hatfield desires to assure to high school students.

> At the same time that the First Amendment rights exist, schools clearly have a right, a power, to conduct the basic educational mission of the schools. They have the basic

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 21

police powers to assure the health, the safety, and the morals of their students and to protect the educational enterprise.

Therefore, First Amendment rights are not absolute. First Amendment rights are balanced against the educational enterprise: what is the school about? Kids, even under this amendment, cannot, whenever they please, gather wherever they please and say whatever they please. The amendment makes it clear that the schools are going to have to be able to conduct the educational enterprise.

130 Cong. Rec., 19228 (daily ed. June 27, 1984) (statement of Mr. Danforth). [Response App. at

738]. Senator Danforth continues, by stating:

Mr. President, I suppose one of the issues that is -- and may be the issue before us - - the extent to which schools operate as a stand-in for parents, and the extent to which schools operate *in loco parentis*. I think that the schools have the general authority, and should have the general authority, to try and create an atmosphere which is conducive to the intellectual, physical, psychological development of children, and that the schools have the inherent power to take such actions as are conducive to such development of kids, and in like manner, to try to prevent those activities which are injurious to the mental, emotional, and physical development of children.

130 Cong. Rec., 19228-19229 (daily ed. June 27, 1984) (statement of Mr. Danforth). [Response App.

at 738].

Further, the Congressional Record validates Defendants' position that the school has a duty

to prohibit violations of law where the purposes of the club are based on illegal activities and also

clearly indicates Congress's intent that the activity subject to scrutiny under the Equal Access Act

**" not in and of itself [be] unlawful**." 130 Cong. Rec. , 19218 (daily ed. June 27, 1984) (statement

of Mr. Dixon). [Response App. at 728]. **"You cannot bring in an outside organization that is**

**advocating or establishing some kind of purpose to violate laws of those states."** 130 Cong.

Rec., 19224 (daily ed. June 27, 1984) (statement of Mr. Hatfield). [Response App. at 734].

In the alternative, if the Court finds that the intent of Congress is not clear, LISD based its

action on a permissible construction of the statute. Contrary to the misrepresentation by Plaintiffs,

as evidenced by the plain language contained in same; the exception is clearly three-fold, not one-fold: 1) **to maintain** order and discipline, 2) **to provide** for the well-being of students and faculty, **and 3) to assure** that attendance of students at meetings is voluntary. 20 U.S.C. § 4071 (emphasis added).

> **2.    State law clearly prohibited the conduct and activity promulgated by Plaintiffs, both at the time it initially denied Plaintiffs' request to meet on campus and at the present time.**

As the summary judgment evidence clearly indicates, and which Plaintiffs do not dispute, both at the time the subject of this lawsuit and at the present, the State of Texas had, and has, laws banning the sexual activity promulgated by GAP Youth. TEX. PENAL CODE ANN. §§ 21.06 and 21.11(a).

> **3.    LISD appropriately invoked the exception for disruption.**

Defendant also invoked the exception to the Equal Access Act of maintaining order and discipline (disruption exception). Under Title IX, 20 U.S.C. § 1681(a) (2003), the District is liable when it acts with deliberate indifference to known acts of harassment in its programs or activities, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999), which include sexual orientation discrimination. *U.S. Office of Civil Rights*, 1/16/2001. There is a potential for this type of harassment, due to meetings being held at the school, which could lead to a disruptive and potentially dangerous and harassing incident to students, which thus requires LISD to maintain order. [LISD MSJ App. at 639 and 677, Clemmons Dep. 25:13-25, 26:1-10].

LISD officials were concerned with the potential of material and substantial disruption that may accompany the exercise of Plaintiffs' expression. This concern was a "reasonable forecast" of disruption. The Fifth Circuit has held that "it is not necessary that the school administration stay a

reasonable exercise of restraint 'until disruption actually occur[s].'" *Butts*, 436 F.2d at 731. There is no constitutional requirement for a specific rule regarding the extent of student conduct before the school administration may act reasonably to prevent disruption. *Eisner v. Stamford Bd. of Educ.*, 440 F.2d 803 (2nd Cir. 1971); *Richards v. Thurston*, 424 F.2d 1281 (1st Cir. 1967). Reasonable prior restraint of content is allowed for those materials which are obscene or inflammatory. *Shanley*, 462 F.2d at 971.

Accordingly, LISD officials exercised reasonableness in their forecast of disruption that might result from the exercise of expression and invoked the exception for maintaining order and discipline under the Equal Access Act. Additionally, LISD had the right to exercise reasonable prior restraint of content to those materials which, as viewed on the website, were obscene in its reasonable judgment.

Therefore, Plaintiffs are not entitled to summary judgment because LISD had no policy or custom of abridging Plaintiffs' freedom of speech and association by denying Plaintiffs access to a limited public forum.

### 4. Defendant, Jack Clemmons, is entitled to qualified immunity.

Defendant, Jack Clemmons, is entitled to qualified immunity as clearly illustrated in his Motion for Summary Judgment previously filed with the Court, which is incorporated herein for all purposes as set forth therein, including all exhibits attached thereto.

## V.

## CONCLUSION

As shown hereinabove, there is reasonable summary judgment evidence which would cause a jury to return a verdict in favor of Defendants and against Plaintiffs, thereby precluding summary

---

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 24

judgment for Plaintiffs. Therefore, Plaintiffs' Motion for Summary Judgment should be in all things

denied.

Respectfully submitted,

McWHORTER, COBB AND JOHNSON, L.L.P.
1722 Broadway
Post Office Box 2547
Lubbock, Texas 79408-2547
806/762-0214
806/762-8014 (FAX)

Ann Manning
State Bar No. 12950100
R. Michael McCauley, Jr.
State Bar No. 00797030
Timothy T. Pridmore
State Bar No. 00788224

By: _____
Ann Manning

ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

This is to certify that on this the 7th day of November, 2003, a true and correct copy of the above and foregoing document has been sent by certified mail, return receipt requested to:

F. Brian Chase
LAMBDA Legal Defense
and Education Fund, Inc.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
*CM/RRR #7003 1010 0000 1885 9232*

Monty Wade Sullivan
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
*CM/RRR #7003 1010 0000 1885 9225*

_____
Ann Manning

Defendants' LISD, Havens, Hardin and Clemmons' Brief in Support
of Response and Objections to Plaintiff's Motion for Summary Judgment and Brief

Page 25